Haulenbeck v. Cronkright.

---

HAULENBECK and others vs. CRONKRIGHT and others.

1. The estate or interest of a widow in lands in which she is entitled to dower, is the right to have one-third set off to her by metes and bounds, to enjoy the same for her natural life. Like all other tenants for life, she is not entitled to commit or suffer waste, and must keep the premises set off to her in repair.

2. When partition can be made of lands wherein an estate in dower is had, the dowress retains her estate as it was before. If dower has not been assigned, she retains the right to have it assigned. If an assignment has been made, she retains the part set off to her unaffected by the partition.

3. If partition can be and is made, the dowress is not a necessary party to a partition suit in equity.

4. When a sale is made under proceedings in partition, the dowress is entitled by the supplement of 1855 to a just and reasonable satisfaction for her estate. This means full compensation for the loss which she sustains by having her estate taken from her by the decree of the court. The value of her estate must be computed from the use and profits she was entitled to derive from it if not sold.

· 5. It was not intended by the supplement of 1855 that the interest of one-third of the net proceeds was to be paid the dowress, or a sum in gross computed from the interest of such one-third, as a compensation for the sale of her estate.

6. When one person owns a life estate or an estate for years, and the reversion belongs to another, the owner of the reversion is entitled to all the benefit to accrue from the rise in value of the property before the falling in of the precedent estate.

7. Rules 130 and 131 are the rules of this court in sales of lands in partition proceedings, authorized by statute, and as such are, until changed, the binding law of the court.

8. It is a proper ground of exception that the master, in his conclusions as to matters of fact, has made a report contrary to evidence.

9. The conclusions of a master, who has examined and seen the witnesses, are always regarded in equity as entitled to great respect, and where his conclusions are clearly supported by competent witnesses who are unimpeached, his report will not be set aside because there is conflicting testimony, unless it clearly appears from the weight of such testimony and the nature of it that the master has erred. No error appears here.

---

This cause was argued upon the exceptions of Elizabeth Cronkright, widow of James Cronkright, deceased, to the report of the special master as to the gross sum to be paid to her in lieu of her dower in the lands of which her late husband died seized, sold by order of the court in a suit for partition.

*Mr. W. B. Williams,* for exceptant.

*Mr. B. Williamson* and *Mr. W. S. Whitehead,* for the heirs-at-law.

Haulenbeck *v.* Cronkright.

THE CHANCELLOR.

The supplement to the partition act, passed in February, 1855, authorizes the court in which the partition proceedings are had, to determine whether any existing estate of dower or curtesy in the premises ordered to be sold, ought to be excepted from the sale, or whether the same should be sold. It also directs, upon such sale, that the court shall direct the payment of such sum in gross, out of the proceeds of the sale of the premises, to the person entitled to such estate in dower or by the curtesy, as shall be deemed a just and reasonable satisfaction for such estate or interest.

The estate or interest of a widow in lands in which she is entitled to dower, is the right to have one-third set off to her by metes and bounds, and to enjoy the same for her natural life. Like all other tenants for life, she is not entitled to commit or suffer waste, and must keep the premises set off to her in repair. The duty imposed upon the court by the statute is, to determine in each case what is a just and reasonable compensation in money for this estate, when sold by its order. The sale in partition proceedings is not for the benefit of the dowress, nor are the partition proceedings for her benefit; she cannot institute them. They are instituted by one or more of the tenants in common for a partition of the estate among them, and when the partition can be made, the dowress retains her estate in the premises as it was before. If dower has not been assigned, she retains the right to have it assigned. If an assignment has been made, she retains the part set off to her unaffected by the partition. If partition can be and is made, the dowress is not a necessary party to a partition suit in equity.

When a sale is made, the dowress is entitled, by the statute, to a just and reasonable satisfaction for her estate. This means full compensation for the loss which she sustains by having her estate taken from her by the decree of the court. The value of her estate must be computed from the use and profits she was entitled to derive from it, if not sold. The value of a life estate in land must be computed on different

principles from the value of the fee. In both cases the actual present income or profit must enter into the calculation. But in calculating the value of the fee, the future rise in value, in very many cases, is an important element in the calculation. Lots entirely unproductive, or nearly so, very often are certain to double in value in ten years, from their situation and the probable approach of improvements. This is the inducement of capitalists to purchase and hold lands in the vicinity of cities, which not only produce no income, but are subject to constant taxes and frequent assessments. Such lands are especially of little value when set off to a dowress. Then, the uncertain duration of her estate: Neither she nor her lessees or assigns could venture to improve them to any extent, even if the property should come into requisition during her life. To the owner of the fee, such unproductive lands are often a much more productive investment than could be had at compound interest.

Where one person owns a life estate, or an estate for years, and the reversion belongs to another, the owner of the reversion is entitled to all the benefit to accrue from the rise in value of the property before the falling in of the precedent estate. It would be unjust to take away or diminish this right by regulation made for the more convenient and profitable partition of lands, or for their sale, when necessary. It would be giving the property of one person to another. To reserve an outstanding estate in dower or by curtesy, on a sale of lands in partition proceedings, is in most cases very injurious to the sale, generally much more so than the value of the outstanding estate. Few will buy a dwelling-house of which one-third or every story might be set off to a dowress. In a manufacturing establishment it would be yet more detrimental to the sale; and even in a farm, very objectionable to one purchasing for his own use. The power to sell such estate with the property is a wise provision. But it was not intended, nor can it justly be used, to give to the dowress or tenant by curtesy a greater share of the proceeds of sale than the value of the estate taken away.

The statute does not provide that the gross value shall be calculated upon one-third of the interest of the net proceeds of sale, or that the interest of one-third of the net proceeds shall be paid her for life, as was provided in the twenty-third section of the partition act, to induce her to consent to release her dower. But it directs the court to determine what shall be a reasonable sum in gross to be paid to her; or in case she does not elect to accept a sum in gross, what shall be a just and reasonable sum to be invested for her. These provisions show clearly that it was not intended that the interest of one-third of the net proceeds was to be paid her, or a sum in gross computed from the interest of such one-third.

In the provisions for the sale of estates by dower and curtesy in sales of lands of infants, by order of this court, similar provisions are made for ascertaining the value in gross of such estates, and for providing a sum to be invested for the life of the tenant.

These values must be ascertained in each case by the judgment of the court, and the Court of Chancery has adopted rules to be applied in cases of sales of infants' lands, to ascertain the value of such estates in dower or by curtesy. These rules, by reason of their generality, may, if strictly applied, in some cases work injustice; but it is, in practice, impossible to determine each individual case without some general rules for guidance.

The computation from the income only would be most just, if the income could be assumed to be fixed and permanent, and without change in the probable life of the life tenant. But in the position of real estate in New Jersey, which has for some time been constantly increasing in value and productiveness, and which will, with great probability, continue so to increase, it was thought, on adopting these rules, that a strict adherence to present income alone would be unjust to the tenant by dower or curtesy. In most or nearly all cases of such sales, the interest of the proceeds much exceeds the real income. The interest on the proceeds was therefore made the basis of the computation of the limit

of the value to be allowed ; and upon ascertaining the value from the actual net income, in case of dower one-half, and of curtesy one-fourth of the excess of the value, calculated from the proceeds of sale, is directed to be added to the net income. The reason for restricting the value from income, which might seem most just, was both, because, in many cases, a temporary or accidental increase in actual income might be made the basis, and because (especially in the case of infants where the witnesses are often produced by those whose interests are adverse to them,) the yearly value is a matter of judgment and often of imagination, and witnesses can be selected whose opinions are well known to be always for the highest values. The difference in favor of dower was grounded in part on the rule of law which always favors dower, and in part on the fact that in the majority of cases the dowress is the mother of the infants or tenants in common, and any allowance to her will result for their benefit and contribute to their support.

It must be admitted that to a certain extent these rules are arbitrary, as all rules in law and equity, and in legislation where the adoption of rules is required to meet some emergency, and must be, in their origin, although founded on the best reasoning of the jurist or law-giver.

Rules 130 and 131, adopted originally for sales of infants' lands, are by rule 141 applied to sales of lands in partition proceedings, and they are the rules of this court, authorized by statute, and as such are, until changed, the binding law of the court.

The special master, to whom it was referred to ascertain the gross value of the dower of the widow, has in all things computed it according to the rules. But in ascertaining it, the yearly income, insurance, taxes, and repairs had to be ascertained by evidence. The exceptant maintains that the master's report is against the clear weight and effect of the testimony. It is a proper ground of exception that the master, in his conclusions as to matter of fact, has made a report contrary to the evidence.

The conclusions of a master, who has examined and seen

the witnesses are always regarded in equity as entitled to great respect, and where there is conflicting evidence, and his conclusions are clearly supported by competent witnesses who are unimpeached, his report will not be set aside because there is conflicting testimony, unless the weight of such testimony, on account of the great number of the witnesses and the nature of their evidence, is such as to make it clear that the master has erred. The premises here are three valuable residences in the English neighborhood, in Bergen county, on the Bergen turnpike, each with a number of acres of land attached, such as to entitle them to be called farms. But their chief value is as country residences.

Two witnesses, produced by the exceptant, state that in their opinion two of these places would rent for $2000 each, and the third for $800 or $900. The master has, in his calculation, taken the annual value of the first two at $900 each, and that of the third at $600.

These witnesses are real estate agents, residing at Englewood, six miles distant from this property. One of them has been concerned in letting houses, as well as selling real estate. But it does not appear that either of them had anything to do with property in this vicinity, or anywhere near it, such as to give them any knowledge of rents there. The value of the evidence of such agents as experts, if they can at all be admitted as experts, must altogether depend upon their knowledge of rents in the vicinity of the property.

The testimony of an agent, thoroughly acquainted with the yearly value of houses in the city of New York, would be of little value as regards houses in a country village. And the master may have rightly concluded that the evidence of agents who formed their opinions from the flourishing and wealthy town of Englewood, was of little value as to houses situate in a more rural and agricultural part of the county of Bergen.

The other witnesses are two inhabitants of the English neighborhood, who have lived on their own farms for fifty and twenty years, respectively, in the vicinity of this property;

one of them on a farm adjoining it, and who naturally, for years, would know the rents received for every house of any importance in the neighborhood. Of their credibility the master was the most proper judge. The third witness for the heirs or tenants in common is a resident in the neighborhood, who has been engaged as a real estate agent in the letting and sale of property in the vicinity.

The report of the master is warranted and sustained by the testimony of these three witnesses. I cannot, under any rule that should govern in such exceptions, determine that the master has erred. On the contrary, my own conclusions from the evidence, if it was my duty to determine the matter originally, would be much the same as those of the master.

The exceptions must be overruled.