Van Ness *v.* Van Ness.

---

EPHRAIM VAN NESS

*v.*

JACOB S. VAN NESS.

1. A master's report, on exceptions, will be taken to be correct until error is shown. His conclusions upon the facts will be considered justified by the evidence until the contrary is made to appear.

2. A member of a firm whose duty it is to keep the accounts, and who claims that he has omitted to enter credits to which he is entitled, will be required to make the most satisfactory proof of the mistakes he asks to have corrected.

3. A new reference will not be ordered in a matter of account, simply because the exceptant believes that a more thorough and careful examination of the accounts than he has made, may result in showing a mistake in the master's report.

On bill for an account.   Exceptions to master's report.

*Mr. R. W. Parker*, for exceptant.

*Mr. Edgar B. Ward*, for complainant.

THE VICE-CHANCELLOR.

This case comes before the court on exceptions to the master's report.   The report must be taken to be correct until error is shown.   The burden is on the exceptant. *National Bank of the Metropolis* v. *Sprague, 8 C. E. Gr. 82.* The report must be tried by the evidence produced before the master, and, unless it appears to be wrong when judged by that test, it must be sustained.   Until error is made clear, the master's conclusions must be regarded as correct. *Clark* v. *Condit, 6 C. E. Gr. 322; Haulenbeck* v. *Cronkright, 8 C. E. Gr. 412.*

I have carefully considered all the evidence produced by the parties, and my conclusion is in perfect accord with that of the master; indeed, the force of the evidence is so clearly in one direction that I think no other result was possible in the judgment of an impartial mind.   So far as the report is made up from books, those kept by the exceptant were taken as the guide.   He was the book-keeper of the partnership, and was bound to keep full and accurate accounts. If he has been derelict in his duty, so that doubt and uncertainty have arisen, he must bear the consequences.   No mistake of his should be corrected except upon the most satisfactory proof.   The methods he adopted in conducting the business were those best calculated to insure mistakes and breed suspicions.   The most of his purchases for the firm, he says, were made in his own name, and not in

the name of the firm.  The moneys of the firm and his own were all deposited in bank to his individual credit, with no mark or sign to distinguish the one from the other, and he drew against the deposits thus made, for his own purposes and those of the firm, indiscriminately, according to his pleasure.  This method of conducting the business, it will be observed, afforded his partner no means of ascertaining what part of the moneys standing to his credit, belonged to the firm, and what drafts made against them were chargeable to the firm, except the entries he made upon the books of the firm.  He now says he has not entered all the drafts and payments made by him for the firm.  But his testimony on this point is extremely vague and inconclusive.  On producing a large number of receipted bills and checks, he said those marked " F " represented firm transactions, those marked " I " represented his own individual transactions, and those marked " D " were doubtful or unknown.  He then added : " I think all these payments have not been put in the books; if any of these payments for the firm are not in the books, they ought to be added.  Checks for ' cash ' represent money drawn to pay the men ; sometimes I drew them that way when I wanted money for myself.  I don't mean to say that all the money in the checks ' to cash,' marked ' F,' were drawn for the firm ; the most part of the money in these checks went for the firm."  This is the whole of the evidence tending to show that he was entitled to credits not entered on the books.  In my estimation, it is scarcely sufficient to raise a suspicion that he is entitled to any other credits than those his books show, and I am satisfied the master did right in disregarding it.

The objection most vigorously pressed on the argument was this : that the master, after preparing his report, did not give the exceptant an opportunity, before filing the report, to attend before him to inspect it and make suggestions concerning it.  He contends that correct practice in such cases entitled him to such an opportunity.  *2 Dan. Ch. Pr. 1301.*  And the loss of it in this instance has deprived him

of the chance of convincing the master, by the production of further proofs, that his report is erroneous. But no offer of additional evidence was made. None was specified on the argument of the exceptions, although counsel was urged by the court to disclose such evidence, if any was known to exist. None was mentioned, and I am satisfied neither counsel nor client knew anything, in the way of evidence, which they thought could change the result.

But it was insisted that, in consequence of the imperfect condition of the accounts, there was reason to believe that the master's conclusions were unjust to the exceptant, and the matter ought, therefore, in the interest of justice, to be sent back to a master to afford the exceptant an opportunity to have the accounts examined by a professional accountant, to see if the discovery of a mistake was not possible, and, if such discovery should be made, then that he should be given an opportunity to produce further proofs. Such a course, I am sure, could not be defended as an act of justice; it would be a mere capricious indulgence to the exceptant, granted at the sacrifice of the complainant's rights, and in contempt of the truth as established by the evidence. It certainly would be without precedent, and wear very much the appearance of an arbitrary denial of justice to the complainant.

The exceptions must be overruled, with costs.