THOMAS M. FRENCH et al., receivers,

*v.*

EDWARD A. ARMSTRONG et al.

[Decided January 26th, 1912.]

1. Evidence, in a suit by the receiver of a building and loan association against its former president and solicitor to recover money realized by him from the sale of stock which had been pledged to the association, *held* to show that defendant had charged himself with the duty of making a cash collection on the stock, and had failed to collect.

2. A party who has not pleaded the statute of limitations cannot set it up as a defence.

3. Equity has jurisdiction of a bill by the receiver of a building and loan association against its former president to recover moneys realized, or that ought to have been realized from a sale of stock pledged with the association which he had made but for which he had not accounted.

4. A person who sustained no trust relationship to a building and loan association, and was a mere outsider, and was either himself the buyer, or the agent of the buyer, in purchasing stock pledged with the association, which had been taken by its president for collection, and sold and not accounted for, is liable in an action at law for the agreed price; and hence cannot be brought into equity for that purpose.

On pleadings and proofs.

*Messrs. French, Bergen & Robbins,* for the receivers.

*Mr. Robert H. McCarter,* for the defendants.

STEVENS, V. C.

This is a suit instituted by the receivers of the State Mutual Building and Loan Association against Edward A. Armstrong, John J. Burleigh and two companies to recover the price realized, or that ought to have been realized, from the sale of sixty-five shares of the stock of the Atlantic Electric Light and Power Company.

This stock had been deposited as collateral security by one Moore, for money borrowed from the building association. It had been transferred to its secretary and general manager, Francis R. Fithian, who on January 28th, 1897, had executed a declaration of trust in favor of the association.

It appears that in the autumn of 1898, a Mr. Maloney proposed to Messrs. Morgan and Burleigh that they should acquire the stock of three electric companies, one in Camden and two in Atlantic City, with a view to consolidating them. For the purposes of this case it is only necessary to say that on or about November 18th, 1898, it was agreed (*inter alia*) that there should be paid for the stock of the Atlantic and Electric Power Company $62.50 per share. When fifty-one per cent. of the total issue was obtained by Mr. Burleigh from those who held

it, he was to take it to Philadelphia and receive a part of a total lump sum. With this he was to pay for the stock at the price mentioned. He obtained all· but one hundred and fifty out of a total of two thousand shares; he deposited the money with a Mr, Fowler, president of the Camden Trust and Safe Deposit Company, who opened a special account and then he gave orders to the stockholders upon Fowler, who in turn drew checks in favor of those stockholders for the stock delivered.

Armstrong was one of the directors of the building association, its president and solicitor, and a member of its executive committee. He was also president of the Atlantic Electric Light and Power Company. Burleigh had no official connection with the building association, but was secretary of the electric company.

Prior to November 17th, 1898, Armstrong was himself indebted to the building association, to which he had given, among other things, as security for the money borrowed, one hundred shares of the ·electric company. On that day he took from the safe, with the knowledge of Fithian, the building association's secretary, his own stock and also the sixty-five shares pledged for Moore's debt that stood in Fithian's name, and that .Fithian had endorsed in blank.

On November 22d, 1898, Armstrong received from Fowler a check for $25,000 in payment of his own stock and of certain other bonds and stock belonging to him, ·which entered into the Maloney sale. He did not pay over any part of the amount received until April 19th, 1899. He excuses the delay by saying that there was no complete settlement with him for his own securities until July 18th, 1899; when he received $1,776.67 more. He never collected any part of the price of the. sixty-five shares pledged by Moore, although the evidence shows that he might, for the mere asking, have done so either when he received the price of his own shares or at any time until. September 21st, 1899, when the Fowler account seems to have been closed. There is no satisfactory explanation of this neglect to collect. As the evidence stands, it seems to have been a case of· forgetfulness. Armstrong suggests that he expected Fithian

to obtain the money and that for that reason, after delivering the stock to Burleigh, he gave, or may have given, the matter no more attention, but it is difficult to accept this explanation as a justification for his inaction. He specially undertook the duty of collection. He wrote on the back of the declaration of trust made by Fithian, on obtaining the papers from the association's safe, "I have this to collect cash on. E. A. A." To give more weight to his very vague recollection of a possible conversation with Fithian, than to this, his explicit undertaking, would be altogether inadmissible. He had the stock in his possession endorsed in blank; he was the company's president and solicitor; he did not assume to act as an errand boy for Fithian, as counsel contends on his behalf, but took upon himself the duty of selling the stock and collecting its price. It was plainly incumbent upon him to see that the association got an equivalent for what he himself had parted with.

The record kept by Fowler does not indicate any check drawn to anybody for sixty-two and a half per cent. of the par of the sixty-five shares. The records of the Atlantic Electric Light and Power Company show that on April 12th, 1899, these shares were, among others, transferred to the Electric Company of America, and that the stock certificate issued to that company was signed by Armstrong as president of the Atlantic company, so that Armstrong not only gave the certificates to Burleigh, but participated in the final act that vested the title to them in the purchaser. There is no doubt, on the evidence, that this purchaser had paid the agreed price of them to Burleigh.

On May 12th, 1900, Fithian wrote Armstrong a letter in which he tells him that on April 19th, 1899, he (Armstrong) had sent a check of $6,500, which

"we understood was for the D. L. Moore Atlantic City electric light and power stock of that amount pledged along with $11,000 of Cape May railway stock as collateral for loans."

To this Armstrong replied:

"That was a payment on my own personal account. The Atlantic City-Moore stock has never yet been paid for. When it is it will come to *you.*"

Underneath, under date of May 15th, Fithian made the following memorandum: "5/15. E. A. A. says the D. L. M. payment is yet to come, about $4,000 in cash for the Atlantic City electric stock."

While this indicates that Armstrong and Fithian must have talked about the matter of the price, for no mention of it is made in Armstrong's above response, it also indicates that Fithian was expecting it to come as the result of Armstrong's effort to collect it. Why, when Armstrong's attention was thus pointedly directed to the fact that he had not collected the money, he did not take some step toward getting it, is inexplicable. Whether the check would have been drawn to the order of Fithian as the registered holder or otherwise, is perfectly immaterial.

While Armstrong was, no doubt, a very busy man, as president of the Atlantic company he had participated in the deal and he had had, besides, a large personal interest in the outcome. He could not at that time have forgotten what the transaction was, or, if he had, the means of obtaining accurate information of its details were at hand. It is admitted on all sides that there was no favoritism; that all the stockholders were to be, and were in fact, treated alike and that an application for the money would have been followed by prompt payment.

The evidence is conflicting as to whether Armstrong's attention was again directed to the matter. Reeves says he wrote to him on June 12th, 1902, and produces a copy of the letter and he testifies further that the subject was brought to his attention at committee meetings. Armstrong says that he has no recollection of having received the letter, and he denies that the matter was so brought up. The conflict in the evidence is not important, for the fact remains that Armstrong had charged himself with the duty of collection and had not discharged that duty.

It seems, therefore, perfectly clear that he could have been sued by the association itself.

It is argued, however, that the cause of action is legal, and that the statute of limitations is a bar to a recovery in the law

court, and that even if suit be maintainable here, equity is bound by the statute, just as the court of law would be. To this latter contention it is only necessary to say that the statute has not been pleaded. On the contrary, Armstrong, in his answer, after stating that he has deposited with the receivers collateral to secure the company against loss, says:

"That his object in making such deposit was to indicate his willingness and ability to be responsible to the complainants for said sixty-five shares or their proceeds if ultimate liability on his part should be found to exist, *and he takes the same position yet*."

The question, then, is whether this court has jurisdiction to inquire into the merits of the controversy and make a decree. It seems to me plain that it has. The cases are numerous and uniform to the point that such a suit is maintainable. *Ackerman* v. *Halsey, 38 N. J. Eq. (11 Stew.) 501; Williams* v. *McKay, 40 N. J. Eq. (13 Stew.) 189; Dodd* v. *Wilkinson, 41 N. J. Eq. (14 Stew.) 566; Campbell* v. *Perth Amboy Shipbuilding Co., 70 N. J. Eq. (4 Robb.) 40.* In the case of the *Citizens Loan Association* v. *Lyon, 29 N. J. Eq. (2 Stew.) 110,* an action was sustained by a building loan association against its directors, even before insolvency, on the ground that, in the language of the chancellor, "where there has been a waste or misapplication of the funds of a corporation by its officers or agents a suit in equity may be brought in the name of the company to compel them to account for such waste, misapplication or breach of trust."

In *Williams* v. *McKay,* the case of a receiver of a savings bank against its managers, it was held by the court of errors that the receiver represents not only the corporation but its depositors and creditors, and that the managers stand to such depositors and creditors in the character of trustees; that the trust was direct and that as such it was exempt from the operation of the statute of limitations. It appears to me that building and loan associations stand on very much the same footing as savings banks. They are *quasi* public institutions, dealt with as such by the legislature (*P. L. 1903 p. 457*) and having very similar objects. They are both designed to conserve the

scanty savings of wage earners and other people of small means. If the managers of savings banks are trustees of creditors and depositors, I see no reason why the directors of building and loan associations do not stand in precisely the same relation to their creditors and so-called stockholders. But even if they should not be deemed trustees of an express trust, this would not help Mr. Armstrong, for he would still, according to the above-cited cases, be suable in this court, and he could not take advantage of the statute of limitations for the reason that not only has he not pleaded it, but, as I understand his answer, he has expressly waived the benefit of it.

It is admitted that there is no ground for holding the two defendant companies liable. As to Mr. Burleigh, he sustained no trust relation whatever to the company. He was a mere outsider—either himself the buyer or the agent of the buyer. He took the stock as purchaser, at an agreed price, and was under a legal obligation to pay for it. He could have been sued at law for this price. There does not seem to be any ground for holding him liable in equity.