Motion to strike from the files a purported transcript, decided April 22, 1913.

Appeal dismissed without an opinion, December 10, 1913.

## MARTIN *v.* BROWNSVILLE.

### (131 Pac. 512.)

**Appeal and Error—Errors in Making Transcript of Return.**

Where the transcript of the testimony filed by the appellant in a suit in equity which was to be tried anew on the testimony in the Supreme Court contained 26 pages substituted in lieu of pages contained in the transcript as furnished appellant's attorney by the stenographer who took the testimony on the trial, the purported transcript will be stricken, and, the burden being on appellant to furnish a correct transcript, she will not be permitted to have the case tried on the correct copy of the stenographer's transcript furnished by appellee's attorney for purpose of comparison.

From Linn: William Galloway, Judge.

This is a suit by Elva M. Martin against the City of Brownsville and A. W. Standish, its street commissioner, enjoining the defendants from opening certain streets through plaintiff's premises. There was a decree for defendants and plaintiff appeals. Respondents move to strike from the files of the court what purports to be a transcript of the testimony.

Motion Allowed.

*Messrs. Hewitt & Sox* and *Mr. Amor A. Tussing,* for the motion.

*Messrs. Weatherford & Weatherford* and *Mr. B. S. Martin, contra.*

Mr. Justice Moore delivered the opinion of the court.

This is a motion to strike from the files of this court a purported transcript of testimony. Elva M. Martin commenced a suit against the City of Brownsville and its street commissioner, A. W. Standish, to enjoin the opening through her premises of alleged streets.

Thereafter she commenced another suit against the same parties to restrain interference with the fences inclosing her land. Issues were joined, and, as we understand, both causes were jointly tried, resulting in decree denying the relief which the plaintiff sought, and she severally appealed. The testimony given at the trial was taken in shorthand by B. T. Yates, and from affidavits submitted herewith it appears that much difficulty was encountered in securing from him a transcript of his extended stenographic notes. However, on September 23, 1912, he completed on an Underwood typewriting machine one ribbon and at the same time two duplicate carbon copies of the testimony, to which were attached his certificates to the effect that the transcript was an accurate extension of all the shorthand notes so taken by him, including objections of counsel, the rulings of the court thereon, and the exceptions taken thereto. Yates personally delivered to B. S. Martin, the plaintiff's husband, and one of her attorneys, the original and one duplicate copy of the testimony. The remaining copy was sent to the defendants' counsel. What purported to be the ribbon copy of the testimony was filed in this court December 23, 1912. Upon a subsequent comparison of the transcript so filed with the duplicate copy furnished to defendants' attorneys, it was discovered that 24 pages of the original typewriting had been withdrawn and 26 pages of carbon copy substituted in lieu thereof, showing material changes in the testimony; pages 201 and 320 of the original transcript were not withdrawn, although two other pages were put in evidently intended to supply their respective places in the record. In the original transcript and in the carbon duplicate thereof furnished to the defendants' attorneys, which latter copy has been left with our clerk as a supplement to this motion, the paper used by the court reporter has impressed therein the watermark

"Berkshire Bond U. S. A." and "Bond Textile W.," while in the substituted pages the watermark "Edinample" appears in 23 instances and "Capitol Extra Fine" once, and two pages in which no water lines are discerned.

As illustrating the changes made in parts of the transcript filed in this court, a page of testimony as appears from the duplicate copy prepared by the official reporter and as shown by the corresponding page of the substituted transcript will be respectively set forth, to wit:

"A. When we bought that tract of land from Mr. Kay, I think the distances,—it starts from the northwest corner and runs a certain distance east, I think sixty-eight rods, and then three hundred feet south, then sixty-eight rods west and three hundred—

"Q. I will ask you this question: That plat you executed didn't give the distance of the lots and along Center Street that carried the plat clear over to Center Street?

"A. I think not.

"Q. Do you know what those distances were?

"A. How far we were off of Center Street?

"Q. Do you remember what the distances—do you remember the distances given on the plat of the length of the east line of block five that the plaintiff owns in this case?

"A. The plat called for one hundred feet.

"Q. The plat you filed?

"A. Yes, sir.

"Q. The plat you filed instead of calling for one hundred feet called for one hundred and thirty-three feet, which would carry it over to Center Street?

"A. Yes, sir.

"Q. Now, then, on the other end of that strip from the plat you filed called for one hundred and five feet, it was one hundred feet which carried it over to Center Street?

"A. Yes, sir, some where about five or eight, couldn't say exactly.

"Q. That would be block eight, wouldn't it?

"A. Yes, block eight.

"Q. When you filed that plat you intended to adopt that street, didn't you?

"A. Yes, sir.

"Q. And the lots that you sold off of that was sold according to that plat, were they not?

"A. Yes, sir.

"Fred H. Webber    C X                    Page 13."

"A. When we bought that tract of land from Mr. Kay, I think the distances—it starts from the northwest corner and runs a certain distance east, I think sixty-eight rods, and three hundred and forty feet south, then sixty-eight rods west and then three hundred and forty feet north.

"Q. I will ask you this question: That plat you executed didn't give the distances of the lots and along Center Street that carried the plat clear over to Center Street?

"A. It did not.

"Q. Do you know what those distances were?

"A. How far we were off of Center Street?

"Q. Do you know what the distances—do you remember the distances given on the plat of the length of the east line of block five that the plaintiff owns in this case?

"A. The plat called for one hundred feet.

"Q. The plat you filed?

"A. Yes, sir.

"Q. The plat you filed instead of calling for one hundred feet called for one hundred and thirty-three feet which would carry it over to Center Street?

"A. No, sir. One hundred feet and it did not extend to Center Street.

"Q. Now, then, on the other end of this strip it was five feet wide? which was the distance the land covered by your plat was from Center Street at that point —west end of the strip?

"A. Yes, sir. Somewhere about five or eight feet, couldn't say exactly.

"Q. That would be block eight, wouldn't it?

"A. Yes, block eight.

"Q. When you filed that plat you intended to adopt that street, didn't you?

"A. We didn't adopt any street.

"Q. And the lots you sold off of that was sold according to that plat, were they not?

"A. It was our intention always to sell according to our original plat. We did not know how it appeared on the record, but supposed it was all right.

"Fred H. Webber    C  X            Page 13."

The affidavit of B. S. Martin is to the effect that he did not know who substituted the pages in the transcript of the testimony filed in this court. The affidavits of J. K. Weatherford and of Mark Weatherford show that, though their names appeared on the briefs with that of Mr. Martin as attorneys for the plaintiff, they never had possession of the original transcript. B. S. Martin files a counter-motion to substitute for the original transcript, as filed, the duplicate carbon copy submitted with the defendant's motion herein. It was incumbent upon the plaintiff as appellant in suits in equity to be tried anew on the testimony to file in this court a correct transcript of such testimony: section 554, L. O. L. This she did not do, but there was left with our clerk a transcript mutilated by the withdrawal of the number of pages mentioned and the substitution of other pages in their stead. Who is responsible for the changed condition of the record we do not attempt to state. As these are civil suits and the burden was imposed by law upon the plaintiff as appellant to file with our clerk a correct transcript of the entire testimony, she must suffer the consequence of a neglect to discharge the obligation thus placed upon her. A judicial record is supposed

to impute absolute verity, and it is strange, when by means of duplicating on a typewriter so many checks against the alteration of a public record exist, that an attempt should be made to foist upon this court a spurious transcript.

The motion of plaintiff's counsel to try these cases on the duplicate carbon copy is denied, and the motion to strike from our files the purported original copy is allowed.                                    MOTION ALLOWED.

MR. JUSTICE BURNETT took no part in the consideration of this motion.

. [The above appeal was dismissed without a written opinion December 10, 1913.—REPORTER.]