FREDERICK K. FISH

*v.*

A. GOULD HARRISON et al.

[Decided February 19th, 1917.]

, Under the evidence in this case—*Held*, that the purchase of fifteen shares of the stock of the Harrison Milling Company was made by one of the stockholders with his own funds, and they are therefore his property.

On bill, &c. On pleadings and proofs.

*Mr. Edward Maxson,* for the complainant.

*Mr. J. Henry Harrison* and *Mr. Robert H. McCarter,* for the defendants.

LEWIS, V. C.

The bill was filed in 1909. A demurrer was interposed and finally an order entered allowing an amended bill to be filed. This was done in the early part of 1909. A demurrer was interposed to the amended bill setting forth numerous grounds of objection. This was overruled.

The relief prayed for in the bill is—first, that an account be had of the amount due from defendant Harrison to the Harrison Milling Company because of improper disposition of the funds of the company by him, and second, that Harrison transfer and deliver to the milling company the fifteen shares of stock purchased from Ida M. Beyea with the funds of the corporation as alleged.

The cause came on for hearing before me, and at the conclusion of the taking of testimony the matter was referred to a master of this court to take and state an account from November 18th, 1905, between A. Gould Harrison and the Harrison Milling

Company, ascertaining and reporting how much of the funds, if any, belonging to the company, A. Gould Harrison has appropriated to his own use or purpose, either in his capacity as treasurer, or otherwise; and to ascertain and state the amount due from him to the company because of any improper, illegal or irregular disposition made by him of the funds or property of the company; and in addition the master was ordered to take testimony for the court as to whether or not fifteen shares of the capital stock of the company, purchased by him with the check of the Harrison Milling Company, were bought with the funds and paid for out of the treasury of the company; and the master reports that he has taken and stated an account from November 18th, 1905, between A. Gould Harrison and the Harrison Milling Company; that he has taken as valid the resolution in the minute book of the Harrison Milling Company, dated November 18th, 1905, which, in his opinion, charged off the net drawings of A. Gould Harrison in the sum of $4,552.63 up to and including November 30th, 1905. The account starts on December 1st, 1905, and as to its debits is a summary of the drawings shown on the account in the ledgers of the company, known as "A. Gould Harrison," and throughout the testimony called his "drawing" account—$7,113.62. That the last item on either side of this account in the ledgers of the company is dated August 24th, 1911, when the account appears to cease; that both expert accountants agree on this figure, $7,113.62, as the total of the drawings shown by the "A. Gould Harrison" account from December 1st, 1905, to August 24th, 1911, inclusive; that the accountant of the complainant seeks to add to this figure a total of $450.71—the drawings shown by the account from November 21st, 1905, to November 29th, 1905, inclusive; that it was the intention of the resolution, although it bears date November 18th, 1905, to include the drawings to November 30th, 1905, the figures $4,-552.63 being plainly set forth in the resolution; and the ledger account showing a debit of that exact amount on November 29th, 1905, is balanced by a credit entry of that amount, pursuant to the resolution.

The master further reports that in order to ascertain how much of the funds, if any, belonging to the company, A. Gould

Harrison has appropriated either in his capacity as treasurer, or otherwise, he has added to the total of the drawing account of A. Gould Harrison, the salary which he actually drew, as shown by the books, from November 18th, 1905, to September 30th, 1909, after which latter date he was entitled to a salary of $3,000 per year; that from the grand total he has deducted, as a matter of credit against the total debits, all of the credits shown in the ledger account of A. Gould Harrison, together with all salary which he actually drew from week to week during the period from November 18th, 1905, to September 30th, 1909; that in giving these credits shown in the ledger account to the defendant A. Gould Harrison, he has found that all of the resolutions in the minute book of the Harrison Milling Company, charging off the overdrafts of A. Gould Harrison, and authorizing additional salary from time to time, are valid, and that their intent and purpose are carried out in the account books of the company.

The master states in conclusion "that the amount due from the said A. Gould Harrison to the said company, because of any improper, illegal or irregular disposition made by him of the funds or property of the said company is the sum of $868.58, with interest from August 24th, 1911, since which date said sum has been due. In arriving at this figure I have not given A. Gould Harrison any credits for salary which he did not draw at the rate of $3,000 per year, commencing October 1st, 1909, as apparently authorized by resolution appearing on the minute book of the company under date of September 13th, 1909, for the ledger account 'A. Gould Harrison' shows no such intention to credit him. It may be that he neglected to draw his full annual salary after October 1st, 1909, but he cannot recover it in this action, in the absence in said ledger account of any expressed intention on the part of the company to credit his debit balance with such credits as may be due him on account of said salary."

The question concerning the ownership of the Beyea stock was reserved by me until the master had made his report.

Exceptions to the whole report of the master were filed by the solicitor of the complainant, but after carefully reading several times all the testimony that has been taken in this cause, I can find no error in the master's conclusions. The burden of proof

is upon the exceptant to show that the master is mistaken. This he has failed to do, and the master's report should be confirmed.

This is a close corporation, all the stock being held by A. Gould Harrison, his wife and Frederick K. Fish. The suit was properly brought, as was decided in an opinion filed by the chancellor when sitting as a vice-chancellor; it being a well-settled rule that a stockholder, desiring relief by way of injunction or accounting for the misconduct of the officers or directors, misappropriation of the property for their private advantage, is not, in all cases, compelled to first ask the corporation to sue, and on its refusal institute suit, making the corporation a party.

If there were a single share of stock held by a person who had not given his consent to the charging off of these overdrafts made by A. Gould Harrison, I should not hesitate to set all the transactions aside, but the Beyea stock has been sold to A. Gould Harrison, and they, therefore, cannot complain; and, as I find that Mr. Fish consented to the crossing off of the overdrafts, he is estopped, and there is no one else to complain, as the wife of A. Gould Harrison has stood shoulder to shoulder with her husband. Of course, this conclusion depends upon my finding that the Beyea stock was purchased by Mr. A. Gould Harrison with funds belonging to him, which I may say is the conclusion that I have reached.

The bill and the proofs show that from the year 1907, the date of the acquisition of the Beyea stock by A. G. Harrison, the complainant, Fish, owned forty shares of the capital stock of the Harrison Milling Company; defendant A. G. Harrison owned twenty-four shares, and defendant A. L. Harrison sixteen shares. These three stockholders were also the only directors of the corporation. Ida M. Beyea owned fifteen shares of stock for three or four years prior to 1907, they having come to her from the estate of her father, Hugh Mullen. These fifteen shares of stock were purchased by A. G. Harrison in February, 1907, and any rights or claims against the corporation that Mrs. Beyea may have had passed to the purchaser upon the transfer of her stock. She has not complained, and cannot complain, because she is not a stockholder.

This fifteen shares was purchased by A. Gould Harrison with the check of the defendant the Harrison Milling Company, he claiming that he sold his house and lot in Caldwell to his brother for $2,000, which he then loaned to the company and deposited to the credit of the company in the Bank of Montclair.

In my opinion, in *Fish* v. *Harrison, 83 N. J. Eq. 533,* I there stated: "'I feel satisfied that the brother of the defendant has told the truth about his part in the transaction." The wife of A. Gould Harrison testifies that she and her husband told Mr. Fish of the proposed sale of their Caldwell home for the purpose of getting funds to buy the stock, and that Fish was told of the sale and of the fact that the money had been put in the business until they could get hold of this stock. Fish admits that he suggested to Harrison the purchase of the stock by him, and that he consented that the excess above par of $20 a share, which the stock cost, could be charged off to the expense account of the company.

Harrison produced evidence showing an entry "A. Gould Harrison, $2,000" on the stub of the company's check book as of September 19th, 1906, and his own paid check, for this amount to the order of the company. The books of the bank were produced and they showed the debit of this amount against Harrison's individual account, and its credit to the company's account. The expert accountant for the complainant admitted in the testimony before the master that there did appear on the check stub, on the date in question, a deposit which included Harrison's check of $2,000.

The manner in which a record of this loan was kept was by means of tickets or slips. Slips of paper termed "tickets" were kept in the cash drawer. Upon these were placed cash receipts and payments, instead of immediately placing them in the cash book. A loan would be made to the company and entered on a ticket. Upon repayment of the loan the ticket would be destroyed. Harrison testifies that when he obtained the cash from the sale of his house the company was a little short of funds, and as he did not know how soon he could get the Beyea stock, he loaned the money to the company, depositing it in the company's bank account until he had completed negotiations for the

purchase of the stock.  He further testifies that Coleman made an entry of this $2,000 credit upon a slip; the slip was put in the drawer, and that he, Harrison, saw the slip.

The whole matter of the stock purchase was gone into, and after the purchase of the Beyea stock for $1,500, the $500 still owing from the company to Harrison was left on the ticket as a credit, and subsequently repaid to Harrison.  I am satisfied that the loan was made and that $1,500 of it was used in the purchase of the Beyea stock.

I shall advise a decree in accordance with these views.