By a decree of this court, complainant was adjudged to be entitled to an accounting, as prayed for in his bill of complaint, and a reference to a special master of this court was accordingly made. (See case reported sub nom. Oliver v.Autographic Register Co., 118 N.J. Eq. 72; 177 Atl. Rep. 680.) This decree and reference were, on appeal, subsequently affirmed by the court of errors and appeals, 119 N.J. Eq. 481;183 Atl. Rep. 171, and thereafter the special master, in accordance with that reference, took testimony concerning the amounts due complainant from defendant and filed his report with respect thereto. It is against the confirmation of this report that defendant has filed the exceptions, sixty-four in number, now urged by it.
It is to be observed that while the report of a master, with respect to matters to him referred for the purpose of taking testimony and reporting thereon, is but a recommendation, merely advisory to, and not conclusive upon, this court; nevertheless the conclusions therein expressed upon factual questions referred will not be disturbed, even though there is a sharp conflict in the testimony (Izard v. Bodine, 9 N.J. Eq. 309; Clark v.Condit, 21 N.J. Eq. 322; Van Ness v. Van Ness, 32 N.J. Eq. 669; Haulenbeck v. Cronkright, 23 N.J. Eq. 407; affirmed,25 N.J. Eq. 513; Wilson v. Sandall, 92 N.J. Eq. 130;111 Atl. Rep. 322; affirmed, 92 N.J. Eq. 463; 113 Atl. Rep. 927), unless it clearly and satisfactorily appears that the master erred in reaching them (Sinnickson v. Bruere, 9 N.J. Eq. 659; PeoplesTrust and Guaranty Company of Hackensack v. Genden, 119 N.J. Eq. 249; 182 Atl. Rep. 25; affirmed, 121 N.J. Eq. 54;187 Atl. Rep. 35; Weiss v. Keystone Realty Co., 14 N.J. Mis. R. 65;182 Atl. Rep. 478; affirmed, 120 N.J. Eq. 113; 183 Atl. Rep. 901); the burden of showing which, however, is upon the exceptant.National Bank of the Metropolis v. Sprague, 23 N.J. Eq. 81;Fish v. Harrison, 87 N.J. Eq. 103; 100 Atl. Rep. 185; affirmed,sub nom. Fish v. Harrison Milling Co., 89 N.J. Eq. 212;103 Atl. Rep. 1052.
All of the exceptions here urged — other than those pertaining to matters already adjudicated by the determination of *Page 20 
this court reported in Oliver v. Autographic Register Co.,supra — and hence, none of which need now here be considered — may conveniently be grouped, and will be here dealt with, under two heads, viz.: (1) those pertaining to the allowance of royalties under the contract of May 23d 1923, upon models other than numbers 6 and 7, and (2) those relating to the allowance of damages for issuing licenses in violation of the provisions of the contract of January 2d 1924.
In support of those of its exceptions which fall within the first of these groups, defendant contends that its liability for payment of royalties is, under the terms of the contract of May 23d 1923, expressly limited to royalties upon its sales of models numbers 6 and 7, exclusively, basing its contention upon the following provisions of the contract in question:
"The Company (defendant) further agrees that it will pay to Oliver the following royalties each year, beginning January 1st, 1923, during the life of either of said patents or during the life of any patent to be granted on any of said applications; Fifty (.50c) cents on each and every Shoupaligner Manifolder (Model No. 7) which it may sell each year up to two thousand (2,000) and guaranteeing the payment of fifty cents (.50c) on a minimum of one thousand manifolders to be sold each year. In the event that the total number of manifolders sold in each year shall be more than two thousand (2,000), the royalty on each and every manifolder comprised in the excess over two thousand (2,000) shall be twenty-five cents (.25). Seventy-five (.75) cents on each and every Shoupaligner Recorder (Model No. 6) which it may sell each year up to eleven hundred and fifty (1,150) and guaranteeing the payment of seventy-five (.75) cents on a minimum of six hundred and sixty-six (666) recorders to be sold each year. In the event that the total number of such recorders sold each year shall be in excess of fifteen hundred, the royalty on each and every such recorder comprised in the excess over fifteen hundred, shall be fifty (.50) cents."
As against this, complainant vigorously insists that it is entitled to royalties not only upon models numbers 6 and 7, but also upon models numbers 8, 9 and 10; and this because, as it contends, the words Model No. 7 and Model No. 6, as employed in the contract, are merely descriptive and not restrictive of the types of manifolders and recorders upon the sales of which royalties are to be paid to him; as is indicated by the use of the parenthesis, as well as the provision of the *Page 21 
contract that: "The payment of the aforesaid royalties shall, however, be due only on manifolders and recorders which embody any of the patented inventions of Oliver set forth in the said patents or applications set forth in the premises."
A careful consideration of the contract, however, as well as of its objects, purposes and the circumstances surrounding its making, precludes the adoption of either of the foregoing contentions.
The evidence clearly discloses that the primary objects and purposes which the contract was designed and intended to accomplish were to provide a means or method whereby complainant (1) would be ensured of a $5,000 annual income, inclusive of his $4,000 annual salary, and (2) would be incited and spurred on to greater efforts in developing and perfecting those new and useful improvements relating to autographic registers, manifolders and recorders of which he alone was the inventor, and all of which were described in the patent applications mentioned in said contract.
In view of complainant's fixed salary and the minimum royalties guaranteed him under the contract, the fulfillment of each of these objectives is readily accomplished by the allowance to him, in the one instance, of the specified royalties upon sales made by defendant of none other than manifolders and recorders, models 6 and 7, respectively, and, in the other instance, of the specified royalties on all "manifolders and recorders which embody any of the patented inventions of Oliver" alone, namely those described in any or all of the patent applications, Serial Nos. 442,633; 442,635; 443,371 and 508,291; specified in the contract of May 23d 1923.
On the one hand, to hold, as urged by defendant, that the second of the above cited contractual provisions restricts, rather than enlarges in the respects hereinabove indicated, the first of said provisions would, in view of its express limitation of royalties to manifolders and recorders embodying only the inventions of Oliver alone, even bar and preclude complainant from receiving any royalties upon even Models Nos. 6 and 7; since those embody the inventions of both complainant and Walter C. Shoup, jointly, and not those of complainant alone. *Page 22 
On the other hand, to hold, as urged by complainant, that the second of these contractual provisions so enlarges the first as to comprehend and entitle him to royalties upon any and all manifolders and recorders, irrespective of their model numbers, which are sold by defendant, provided only that they embody any of the inventions embraced in models 6 and 7, would be to completely ignore and do violence to the plain language of that very provision itself, the applicability of which, by its very language, is limited to manifolders and recorders which embody the patented inventions of Oliver alone, and none others.
The untenability of complainant's contention for such a construction is further demonstrated by the fact that the contract significantly fails to make any mention of Model No. 5, which was then still being sold by defendant, or of Model No. 8, which had already been devised by complainant and was then being manufactured by defendant, or to make any provision for payment of royalties on either of these models, although both of them embodied, as do also Models Nos. 6 and 7, the very invention covered by patent No. 1,396,070. Had the parties intended that defendant, as now urged by complainant, should pay royalties upon any and all manifolders and recorders embodying the invention covered by the aforesaid patent, they easily could, and surely would, have said so; and certainly would not have specified that royalties should be paid merely upon Models Nos. 6 and 7, omitting and making no mention of even Models Nos. 5 and 8; especially in view of the fact that these last mentioned models embodied the invention of the very patent which was embodied in Models Nos. 6 and 7.
Moreover, the specification of Models Nos. 6 and 7, respectively, immediately following, as it does, the general reference to manifolders and recorders, respectively, must, in the absence of a clear manifestation of a contrary purpose or intent, necessarily be held to limit and restrict the application of the general reference to the particular models thus specified.First National Bank, c., v. Davies, 315 Pa. 59;172 Atl. Rep. 296; Merlo v. Veifeld, 275 Ill. 594; 114 N.E. Rep. 369; Cecil
v. Green, 161 Ill. 265; 43 N.E. Rep. 1105; 33 *Page 23 L.R.A. 566; Dawes v. Prentice, 16 Pick. 435; Ellery v. NewEngland Insurance Co., 8 Pick. 14; Sullivan v. Spring, 170 App. Div. 237; 156 N.Y.S. 332; Hickman v. Cabot, 183 Fed. Rep. 747;Hamilton v. Meeks, 198 N.E. Rep. 833. This construction is in full harmony with the well settled rule that the expression in a contract of one or more things of a class implies the exclusion of all that are not expressed, although all would have been implied had none been expressed. 13 C.J. 537; Hickman v.Cabot, supra; Higgins v. Eagleton, 13 N.Y. Misc. 225;34 N YS. 225; Cree v. Bristol, 12 Misc. 1; 33 N.Y.S. 19; Janes
v. Lanier (Ala.), 73 So. Rep. 535.
As tested by the foregoing rules, as well as the one which requires that construction to be placed upon a contract which gives a reasonable lawful and effective meaning to all of the manifestations of intention of the parties as gathered from the attending circumstances and the objects and purposes for the accomplishment of which the contract was designed and intended (Morris Canal, c., Co. v. Matthieson, 17 N.J. Eq. 385;Cameron v. International Alliance, c., 119 N.J. Eq. 577;183 Atl. Rep. 157; certiorari denied, 56 Sup. Ct. 681; Van Syckel
v. Arguaga, 231 U.S. 601; Mobile, c., Railroad Co. v. Jurey,111 U.S. 584; Read v. Merchants Mutual Insurance Co.,95 U.S. 23; Gulf Refining Co. v. Home Indemnity Co., 78 Fed. Rep.
2d 842); the complainant's rights to royalties under the contract of May 23d 1923, is limited and restricted to royalties upon the defendant's sales of models 6 and 7, of its manifolder and recorders, and also those embodying any of the patented inventions of Oliver alone, as described in his patent applications Serial Nos. 442,633; 442,635; 443,371, and 508,291, respectively, or any of the letters patent granted thereon.
In support of those of its exceptions which fall within the second of the hereinabove mentioned groups, defendant contends that the provision of the contract of January 2d 1924, relating to complainant's right to "royalties" upon licenses issued by defendant to others is "a mere agreement to agree," and hence is invalid and not binding on either party. The provision in question reads as follows: *Page 24 
"It is further agreed that should the Company at any time grant a license for the manufacture and sale, to users of any of the appliances under the patents set forth in the agreement of May 23d 1923, upon a royalty basis, that the Company will not consummate said license until entering into an agreement with said Oliver as to the sums to be paid him as royalties for the appliances or machines manufactured thereunder."
This contention is unsound. The provision in question is not, as defendant would have it appear, "an agreement to agree in the future," but on the contrary is a definite absolute promise and undertaking on its part to refrain from issuing any licenses, unless and until it shall have first made an agreement with complainant respecting the royalties which it was to pay him upon "the appliances or machines manufactured" under said license or licenses. That the defendant, without first having entered into such an agreement, issued to Globe Register Company and Egry Register Company licenses, upon a royalty basis, under patents set forth in the agreement of May 23d 1923, is not here denied. That in doing so, defendant breached its said undertaking also cannot be denied, and that complainant is entitled to recover damages by reason thereof is so obvious as to need no citation of authority.
Defendant, however, insists that inasmuch as the damages involved are contingent and speculative, they cannot be made the basis of recovery. The fallacy of this contention, however, lies in the fact that it is founded upon a false premise and an erroneous conception of the rule relating to uncertainty of damages. That rule is directed merely against uncertainty as to cause rather than uncertainty as to the measure or extent of the damage. If it is uncertain whether the defendant's act caused any damage or whether any damage resulted therefrom, then there can be no recovery of such uncertain damages. But where the uncertainty affects merely the measure or extent of the injury suffered by the aggrieved party, it does not bar a recovery.
This rule was recognized and followed with approval inWakeman v. Wheeler W. Mfg. Co., 101 N.Y. 205;4 N.E. Rep. 264, where the court of appeals of New York said: "But when it is certain that damages have been caused by a breach *Page 25 
of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he has caused is uncertain."
In Jacobson v. Laurel Canyon Min. Co., 27 Ariz. 546;234 Pac. Rep. 823, the court said: "It is now generally held that the uncertainty referred to is the uncertainty as to the fact of the damage, and not as to its amount, and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery."
And in Black v. Hogsett, 145 Ark. 178; 224 N.W. Rep. 439,
it was said that the rule that damages which are uncertain or contingent cannot be recovered does not apply to uncertainty as to the value of the benefits to be derived at all; that if it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover.
Among other cases of like import and effect are: Ayres v.John B. Daniel Co., 35 Ga. App. 511; 135 S.E. Rep. 878;Thayer-Moore Brokerage Co. v. Campbell, 164 Mo. App. 8;147 S.W. Rep. 545; Prentiss v. Greene, 193 App. Div. 672;184 N.Y. Supp. 558; Brady v. Erlanger, 188 App. Div. 728;177 N.Y. Supp. 301; affirmed, 231 N.Y. 563; 132 N.E. Rep. 889; Detmar WallonCo. v. Delaware, Lackawanna and Western Railroad Co., 89 Misc. 252; 153 N.Y. Supp. 287; Brademeir v. Pacific Supply Co.,64 Or. 576; 131 Pac. Rep. 512; Trigg v. Clay, 88 Va. 330;13 S.E. Rep. 434; Manss-Owens Co. v. Owens, 129 Va. 183;105 S.E. Rep. 543; Straus v. Victor Talking Machine Co., 297 Fed. Rep. 791;Pye v. Eagle Lake Lumber Co., 66 Cal.App. 584;227 Pac. Rep. 193; Hetzel v. Baltimore and Ohio Railroad Co., 169 U.S. 26;42 L.Ed. 648; 18 S.Ct. 255; Eastman Kodak Co. v. Southern PhotoMaterials Co., 273 U.S. 359; 71 L.Ed. 684; 47 S.Ct. 400.
Nor will the mere fact that the damages are not susceptible of accurate proof (Thayer-Moore Brokerage Co. v. Campbell,supra), or that they can not be calculated with exactness or *Page 26 
precision (Brady v. Erlanger, supra), bar or preclude their recovery. On the contrary, it will be sufficient if the best evidence be adduced which in the nature of the case is possible (Pye v. Eagle Lake Lumber Co., supra), or if the evidence adduced afford a reasonable basis of computation, although the result be only approximate (Eastman Kodak Co. v. SouthernPhoto Materials Co., supra), or such evidence afford a basis of enabling the damages to be estimated with a reasonable degree of certainty (Wolcott, Johnson Co. v. Mount, 36 N.J. Law 262;affirmed, 38 N.J. Law 496; Rabinowitz v. Hawthorne,89 N.J. Law 308.
Here the parties themselves by their agreement of May 23d 1923, as amended and supplemented by that of January 2d 1924, fixed the royalties which defendant was to pay complainant on the machines therein specified. By it, defendant itself undertook and agreed to pay complainant a royalty of fifty cents on each manifolder up to two thousand and twenty-five cents on each one in excess thereof, and seventy-five cents on each recorder up to one thousand one hundred and fifty and fifty cents on each one in excess of one thousand five hundred sold by it in each year. Under the licenses which it issued to the Globe Register Company and the Egry Register Company, respectively, defendant, aside from substantial sums for past infringements, received a royalty of $2 from the former and $1.50 from the latter for each machine manufactured and sold by each of them under their respective licenses.
The machines made and sold by each of these licensees were made and sold by authorization and with the consent of defendant. To the extent of the number of machines which they thus made and sold, the sales of defendant itself were in all probability curtailed; resulting, in turn, in a loss to complainant of additional royalties which he in all probability would have otherwise received. In view of this, equity and good conscience require that defendant should reimburse complainant to that extent, at least, by paying him for the machines so made and sold on the basis of the royalties fixed by the contract of 1923. This yardstick, under the present circumstances, furnishes a pretty safe and just guide for the *Page 27 
admeasurement of complainant's damages, and still leaves defendant with a profit of at least seventy-five cents per machine under the Egry Register Company license and $1.25 per machine under the Globe Register Company license. To do otherwise would be to permit defendant, at the expense of complainant, to profit by its own wrong and to also leave the door open to it to commit a fraud upon him by merely having all of its machines manufactured and sold by others under licenses issued by it in violation of its agreement of January 2d 1924.
Expression and application of the principles underlying the foregoing pronouncements may be found in the case of Washington,Alexandria and Georgetown Steam Packet Co. v. Sickles, 3Blatch. 535, Fed. Cases, No. 13,832, cited in Sedgwick onDamages (1920) (9th ed.) 2525, in which the plaintiff sought to recover on an agreement under which defendant was permitted to use its invention and required to pay it for such use, the amount of which payment, however, the agreement failed to specify. In dealing with the admeasurement of damages, the court there said:
"In the case of Seymour v. McCormick, 16 How. 480;14 L.Ed. 1024, this court, on full consideration, and without dissent laid down the proposition that in suits at law for infringement of patents, where the sale of licenses by the patentee had been sufficient to establish a price for such licenses, that price should be taken as the measure of his damages against the infringer. The rule thus declared had remained the established criterion of damages in cases to which it was applicable ever since."
To like effect was the pronouncement in Birdsall v.Coolidge, 93 U.S. 64, 70; 23 L.Ed. 802, where the court said:
"Frequent cases arise where proof of an established royalty furnishes a pretty safe guide, both for the instructions of the court and the finding of the jury. Reported cases of undoubted authority may be referred to which support that proposition; and yet it is believed to be good law, that the rule cannot be applied without qualification, where the patented improvement has been used only to a limited extent and for a short *Page 28 
time, but that in such case the jury should find less than the amount of the license fee; and it is admitted in several cases that the circumstances may be such that the finding should be larger than the royalty. Evidence of an established royalty will undoubtedly furnish the true measure of damages in an action at law, where the unlawful acts consist in making and selling the patented improvement, * * *."
In the light of the foregoing, the rates or royalties as thus fixed by the defendant itself and adopted by the special master in admeasuring complainant's damages under the contract of January 2d 1924, must, under the facts here shown, be deemed to furnish a safe, fair and equitable guide for the admeasurement of complainant's said damages.
Defendant further insists that the complainant's right of action, if any, for damages by reason of its having granted the licenses in question arose prior to January, 1925; and hence had expired and was barred under the statute of limitations in January, 1931, or more than a year before February 2d 1932, when the present action was instituted. Be that as it may, and no view need be and is not here expressed with respect thereto, nevertheless defendant having failed to plead that statute as a defense cannot now, on exceptions, avail itself of that defense.Ruckman v. Decker, 23 N.J. Eq. 283; Easton National Bank v.American Brick and Tile Co., 70 N.J. Eq. 722; 64 Atl. Rep. 917;French v. Armstrong, 79 N.J. Eq. 283; 82 Atl. Rep. 101.
Finally, it is insisted on behalf of defendant that complainant is not entitled to any damages by reason of its having issued a license to Egry Register Company. This insistment is, however, unsound; since it is predicated upon the erroneous asumption that the licensing provision of the agreement of January 2d 1924, had terminated with the termination of complainant's employment, upon the continuance of which it is erroneously assumed to depend. The intent of the parties as manifested by the objects and purposes to be subserved by that provision clearly shows that its existence was not to be dependent upon or co-extensive with the duration of complainant's employment. Had the parties intended otherwise, then they should, and easily could, have said so *Page 29 
by merely specifying that said provision was conditioned upon complainant's continued employment or else by suffixing the words "during Oliver's employment" to the enlarged or unlimited expression "at any time," which they purposely had employed in that provision. Moreover, since the words "at any time" are used in the provision of the contract prohibiting defendant from granting any licenses, except as therein provided for, said words unquestionably have reference to and are co-extensive with the term or life of the respective patents themselves, and during which term or life, the defendant, as owner of said patents, otherwise could, "at any time" grant or issue one or more licenses.
In so far as it is inconsistent with the views herein expressed, the report of the special master will be modified and amended, and as thus modified and amended it will be approved and confirmed.
There will be a decree in accordance with the foregoing conclusions. *Page 30