MORRIS USDANSKY, Respondent, v. ROBERT E. LANE and
    ROBERT E. LANE Co., INC., Appellants.

                 First Department, July 11, 1918.

Contracts — landlord and tenant — action for breach of agree-
    ment to obtain renewal of lease — damages — prospective profits
    — value of good will of business — costs — extra allowance.

Where in an action to recover damages alleged to have been sustained by
    reason of the failure of defendant corporation and its president indi-
    vidually to keep and perform an agreement to use its and his best endeavors
    to obtain a renewal or a new lease at the expiration of the existing one it
    is established that the defendants have failed to perform their contract,
    the court properly instructed the jury that they could consider prospective
    profits which plaintiff would have received in connection with his cigar
    business had he obtained a lease for the period contemplated and that
    upon this question they might consider the profits which plaintiff had
    received from his business during his occupancy of the premises.

The court further properly instructed the jury that if they found the plain-
    tiff entitled to a verdict he had a right to compensation for the value of
    the good will of the business of which he had been deprived by the failure
    of the defendants to perform their contract.

The case was sufficiently long and involved questions of fact so intricate as
    to justify the trial court in making an extra allowance of costs to the
    plaintiff.

APPEAL by the defendants, Robert E. Lane and another,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York
on the 16th day of January, 1918, upon the verdict of a jury,
and also from the corrected judgment entered in said clerk's
office on the 18th day of January, 1918, and also from an order
entered in said clerk's office on the 16th day of January,
1918, denying defendants' motion for a new trial made upon
the minutes, and also from an order entered in said clerk's
office on the 14th day of January, 1918, granting plaintiff
an extra allowance.

    *Nathan B. Chadsey*, for the appellants.

    *Winifred Sullivan*, for the respondent.

MERRELL, J.:

    This is the appeal by the defendants Robert E. Lane
individually and Robert E. Lane Co., Inc., from a judgment

entered in New York county January 16, 1918, in favor of the plaintiff, Morris Usdansky, for the sum of $8,078.68, entered upon the verdict of a jury, and from an order entered in said county on the same day denying defendants' motion to set aside the verdict on the usual grounds. Defendants also appeal from the order granted by the justice presiding at the trial awarding plaintiff an extra allowance of costs of $375.

The action is brought by the plaintiff to recover of defendants damages which plaintiff claims to have sustained by reason of the failure of the defendant corporation to keep and perform a written contract made and entered into by said defendant July 10, 1913, whereby said defendant contracted and agreed to use its best endeavors to obtain the renewal of a certain lease which said defendant then claimed to have for space on the first floor of No. 25 Broad street in the city of New York on the same terms as the lease which it held or to obtain a new lease of said premises on like terms for the term of five years at the expiration of the existing lease. It is also claimed by the plaintiff that Robert E. Lane, treasurer of the defendant corporation, personally contracted with the plaintiff to use his best efforts to obtain such renewal or a new lease at the expiration of the existing lease.

The premises in question had, for a number of years, been held by said Robert E. Lane under a lease from the Broad Exchange Company, which owned or controlled the building. The original lease appears to have been dated January 9, 1906, and ran to said Robert E. Lane for three years from May 1, 1906, to May 1, 1909, at $2,500 a year, with the privilege of subletting. Indorsed upon the back thereof was an extension for two years, or until May 1, 1911, at the same rent. This lease appears, in 1908, to have been assigned to the wife of Lane. Subsequently it appears that a lease was drawn and executed by the Broad Exchange Company, by its president, to Robert E. Lane, from May 1, 1911, to May 1, 1916, at a rental of $2,500 a year. This lease bears date February 7, 1911. Just how or when Robert E. Lane parted with title to this lease does not appear, but by plaintiff's Exhibit 2, offered and received in evidence, on July 10, 1913, the Robert E. Lane Co., Inc., sublet to the plaintiff of the premises which it claimed to hold under a lease from the

Broad Exchange Company, the cigar stand space described as a part of the booth on the northerly side of the hallway leading to the Broad street entrance, for two years, nine months and twenty-one days, beginning July 10, 1913, and ending with the expiration of the lease held by Robert E. Lane, to wit, on May 1, 1916. The premises thus sublet to the plaintiff were only a part of those covered by the lease held by Lane or the Robert E. Lane Co., Inc. In addition to the space sublet to plaintiff, the premises covered by the lease were occupied by a soda water business and also a candy booth. The cigar stand space thus sublet to plaintiff was at the annual rental of $1,500, with restriction against the landlord granting other rights to conduct a cigar business to any tenant, except the restaurant, café and club in the building. At the same time the Robert E. Lane Co., Inc., sold and delivered to plaintiff the cigar business, stock, fixtures and good will, then occupying said space, for the sum of $4,297.46, and in the instrument of sale it was stated that " as a part of said transaction, and as an inducement to the purchase of said cigar stand by said Morris Usdansky the said corporation has agreed that at the expiration of the lease it now has of space at said 25 Broad Street, it will endeavor to obtain a renewal of said lease for the benefit of the said Morris Usdansky," and it thereby agreed to use its best endeavors to obtain a renewal of said lease as before stated.

Under the sale of the business to plaintiff, and having obtained the written contract of the defendant corporation, and, as plaintiff claims, a verbal agreement of the defendant Robert E. Lane to use its and his best efforts to obtain a renewal of the lease, plaintiff took possession of the business and conducted the same until April 22, 1916, at which time plaintiff delivered possession of the business to one Otto Schwalb under a bill of sale in consideration of the payment of $325. This sale, plaintiff contends, he was compelled to make by reason of the fact that he was refused a new lease, and that he was then informed that Schwalb had obtained, sometime in November before, from the owners of the premises, a lease for five years commencing at the expiration of plaintiff's term under his sublease.

Plaintiff brings this action to recover damages, alleging that defendant corporation and defendant Lane, individually, failed to keep and perform the contract which it and he had made and failed to use its and his best efforts to obtain for plaintiff a renewal of said lease, but that, on the contrary, by sharp practice on the part of Lane himself, the latter secured a new lease of the premises in question; that Otto Schwalb, the new lessee, was a mere dummy, and that Lane himself was the real party securing the new lease.

The annual rental for the new lease of the premises, including the cigar stand space and the space occupied by the candy booth and soda water business, was $3,500. There is a sharp conflict in the evidence upon the question of the real ownership of this new lease, but sufficient evidence was offered from which the jury could and evidently did find that this lease to Schwalb was not in good faith, and that the lease was in reality one to the defendant Robert E. Lane. Testimony was given to the effect that Schwalb had really nothing to do with obtaining the lease; that he never participated actively in the conduct of the cigar business; that he was a dentist by occupation, and that the business was conducted by Robert E. Lane, Jr., a son of the defendant Robert E. Lane; that the cigar stand was stocked by Robert E. Lane, Jr., with money furnished by the defendant Robert E. Lane; that Schwalb never had possession of the bill of sale of the business until shortly before his examination; that he never received any statement of the business until about that time; that he never received anything from the business, and never expended anything in connection with it; that the entire business was financed by the defendant Lane, and carried on by his son; also that another son of the defendant Lane conducted the candy booth upon the premises. All of this testimony was pertinent upon the question as to whether or nor the defendant corporation, through Lane, its treasurer, and Lane, individually, had used its and his best efforts to obtain for plaintiff a renewal of the contract of lease which it and he had agreed to use their best efforts to obtain.

As before stated, much of the testimony is contradictory, but from the admissions of Schwalb himself as to his non-participation in the business and from the fact that it was

carried on and conducted almost entirely by the Lanes, the jury was justified in finding that Schwalb was no more than a mere figurehead, and that the business was in fact that of the Lanes. Such circumstance was properly considered by the jury in reaching the determination which they must have under the charge of the court that defendants had failed to perform their contract.

The issues involved in the case were submitted in a very fair charge, the court instructing the jury that if they passed the question as to defendants having failed to perform their contract and came to the question of damages, they could consider prospective profits which plaintiff would have reaped in connection with his cigar business, had he obtained a lease for a full five years from May 1, 1916. The learned trial court charged the jury that upon this question of prospective profits they might consider the profits which plaintiff had received from his business during the two years, nine months and twenty-one days when he had carried on the business, and that they could consider the fact that of the demised premises, subsequent to May 1, 1916, the candy booth had been leased at $600 a year, and the soda space at $1,600 a year. The total rental was $3,500, and upon the basis of a subletting which was finally effected to the candy and soda water booths, the cigar stand privileges would only cost the proprietor $1,300, as against $1,500, which he had theretofore paid. Making allowance for the advantage of $200 per year upon the amount which he would have to charge as against his cigar stand privileges, the figures submitted by plaintiff based upon his profits during the period when he had occupied the premises, amounted to $2,534.80 a year, as net profits, and for the five years to $12,674. The trial court charged the jury that while they were not bound by these figures, still they might consider them in arriving at such verdict as they deemed the plaintiff was entitled to receive in case they found he was entitled to any verdict under the evidence. The court further instructed the jury, I think correctly, that if they found the plaintiff was entitled to a verdict, he had a right to compensation for the value of the good will of the business of which he had been deprived by the failure of the defendants to perform their contract.

It is the claim of defendants that such was not the proper measure of damages, but the proof seems to have been sanctioned by the decisions of the courts of our State. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Cramer* v. *Grand Rapids Show Case Co.*, 223 id. 63; *Dickinson* v. *Hart*, 142 id. 183.)

In the *Wakeman* case, Judge EARL, in writing the opinion, in which his associates all concurred, states the rule to be that: " When it is certain that damages have been caused. by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damages. Most contracts are entered into with the view to future profits, and such profits are in the contemplation of the parties, and so far as they can be properly proved, they may form the measure of damage. As they are prospective they must, to some extent, be uncertain and problematical, and yet on that account a person complaining of breach of contract is not to be deprived of all remedy."

The very recent case of *Cramer* v. *Grand Rapids Show Case Co.* (223 N. Y. 63) seems to support the court's instruction to the jury in the case at bar. In the *Cramer* case a recovery was reversed for the reason that the evidence given upon the trial of loss of profits was based upon testimony as to profits during a period of time corresponding to the period of interruption, one year later. This was held to be error. But the court, in the opinion, stated: " A distinction exists between the interruption of an established business and a new venture. The owner of an established business may have it in his power to establish with reasonable certainty the amount of capital invested, the monthly and yearly expenses of operating his business, and the daily, monthly or yearly income he derived from it for a long time prior thereto and for the time during which the interruption of

which he complains continued, thereby furnishing a reasonably correct estimate of the nature of the legal injury and the amount of damages which resulted therefrom."

The case of *Dickinson* v. *Hart* (*supra*) presents a situation substantially like that in the instant case, and the court there held that evidence similar to that upon which plaintiff recovered herein furnished sufficient basis for the award of damages.

The evidence submitted by the plaintiff and which the learned trial court instructed the jury might form the basis of a verdict for damages was quite exact as to the cost and expense which plaintiff incurred in the conduct of the business and the gross receipts during the period that he had operated the business, and the net profits derived therefrom. The court instructed the jury that they should take into consideration the war conditions and other facts and circumstances as bearing upon the reliability of plaintiff's figures. I think, under the cases cited, the court properly submitted the case to the jury upon the question of damages. Under such instructions the jury returned a verdict in plaintiff's favor and against the defendants for $7,500 damages. I think such verdict was entirely permissible under the evidence.

I find no error in the instruction of the jury by the court calling for a reversal, nor that any substantial error was committed during the progress of the trial.

As to the extra allowance for costs, I think the case was sufficiently long and involved questions of fact so intricate as to justify the trial court in its discretion in making the extra allowance of costs that it did.

The judgment and orders appealed from should be affirmed, with costs.

DOWLING, LAUGHLIN, SMITH and PAGE, JJ., concurred.

Judgment and orders affirmed, with costs.