WILLIAM A. BRADY, Respondent, *v.* ABRAHAM L. ERLANGER, Appellant.

First Department, July 3, 1919.

Partnership — dissolution — accounting — interest on profits — partnership in securing lease of theatre and producing vaudeville — damages for breach of agreement to furnish vaudeville — loss of speculative profits — evidence from which damage arising from change of theatrical performance computable — necessity that exact damage be shown.

Upon a partnership accounting interest may be allowed on profits.

Ordinarily it is not possible to recover more than nominal damages for loss of profits due to a breach of an agreement to furnish moving pictures or theatrical attractions.

The courts do not, however, put a ban on recovery of profits lost in moving picture and theatrical enterprises as such. The nature of the business, with its many fluctuations and uncertainties, ordinarily furnishes no fair basis of computation, but if a plaintiff supplies sufficient certainty in his evidence, substantial damages may be recovered.

Where a partnership in the enterprise of procuring a lease of a theatre and there producing vaudeville and dramatic performances is dissolved and an accounting ordered to determine loss or damages sustained by the copartnership enterprise by reason of the acts of one of the partners in improperly discontinuing the vaudeville performance, substantial damages may be allowed where the evidence shows that for a period of fifteen weeks during which the vaudeville business was carried on, there was a net revenue of about $3,500 per week, and that immediately after the discontinuance of the vaudeville performances there was an average weekly decrease of the net income of about $1,200 as compared with the vaudeville period.

Where the fact of loss is certain, the wrongdoer will not be heard to say that the innocent party shall be deprived of any and all recovery merely because the exact amount of damage cannot be fixed with precision.

APPEAL by the defendant, Abraham L. Erlanger, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York upon the decision of the court after a trial at the New York Special Term.

*Edward W. Hatch* of counsel [*David Gerber* with him on the brief; *Mortimer Fishel*, attorney], for the appellant.

*William M. Parke* of counsel [*John B. Stanchfield* with him on the brief; *Nathan Vidaver*, attorney], for the respondent.

PHILBIN, J.:

The plaintiff sued for dissolution of a partnership and an accounting. After trial at Special Term, judgment was rendered dismissing the complaint on the merits. The plaintiff appealed and the judgment was reversed (165 App. Div. 29). In the order of reversal, new findings of fact and conclusions of law were made. An interlocutory judgment was entered thereupon.

Among other things, it was adjudged (1) that the plaintiff and defendant were copartners in the enterprise of procuring a lease of the Auditorium Theatre in Chicago and there producing vaudeville and dramatic performances and that plaintiff had an interest of thirty-seven and one-half per cent therein; (2) that plaintiff was entitled to an accounting and

that as part thereof defendant should account (a) for the profits of the first year (1907–1908) and of the second year (1908–1909); (b) for the proceeds of the sale by the defendant of the lease of the Auditorium Theatre, including the sum of $20,000 paid the defendant therefrom; (c) for any moneys paid the defendant under a contract dated November 6, 1907, whereby it was agreed between the defendant and third parties that vaudeville performances should be discontinued in the Auditorium Theatre; and (d) for any loss or damage sustained by the copartnership enterprise by reason of the abandonment of vaudeville under the contract of November 6, 1907, or by reason of the sale of the lease, as mentioned above. A referee was appointed to take and state the account of the parties.

Thereafter the defendant filed his account. In it he showed (a) the profits for the two years of the copartnership venture; (b) the receipt of the sum of $100,000 for the lease, but credited himself with the $20,000 item mentioned above; (c) that no sum was received by the defendant by reason of the agreement of November 6, 1907. In his report the referee disallowed the credit of $20,000 on the ground that defendant caused the money to be paid to himself without the knowledge or consent of the plaintiff and without any agreement, express or implied, on the part of the plaintiff. The referee also found that as a result of the making of the agreement of November 6, 1907, and the abandonment of vaudeville performances in the Auditorium Theatre, the enterprise had suffered a loss and damage of $50,000. Defendant's account was accordingly surcharged with thirty-seven and one-half per cent of the item of $20,000, and also of the $50,000 damages. Interest was allowed on profits but not on damages. The report, therefore, awarded recovery to the plaintiff as follows: Thirty-seven and one-half per cent of the net profits; thirty-seven and one-half per cent of the surcharge of $20,000 improperly taken by defendant out of the profits; thirty-seven and one-half per cent of the $50,000 damages; interest on the two first items. The interest was fixed as commencing January, 3, 1911, the date when defendant filed his answer denying liability. Upon motion to confirm the report of the referee the Special Term reduced the damages of $50,000 to $25,000,

and plaintiff's recovery in proportion, otherwise confirming the report in all respects.

From the final judgment entered, the defendant appeals, giving notice that he seeks to review the interlocutory judgment. Defendant states, however, that he does not expect this court to review its own interlocutory judgment and consequently seeks modification of the final judgment in only three respects: *First,* by striking out the item of $25,000 damages; *secondly,* by striking out the item of interest; *thirdly,* by allowing defendant the claimed credit of $20,000 in whole or in part.

It is not necessary to discuss at length the point made as to the surcharge of the item of $20,000, as this court in its interlocutory judgment ordered the defendant to account therefor. The evidence sustains the findings of the referee and they should not be disturbed. Interest was properly allowed. (*Blun* v. *Mayer,* 189 N. Y. 153; *Faber* v. *City of New York,* 222 id. 255.)

This leaves for consideration the propriety of awarding the $25,000 damages. The defendant strongly urges that the evidence on this phase of the case is entirely speculative and affords no basis whatever for an assessment of damage. It is true that ordinarily it is not possible to recover more than nominal damage for loss of profits due to a breach of an agreement to furnish moving pictures or theatrical attractions. (*Broadway Photoplay Co.* v. *World Film Corporation,* 225 N. Y. 104; *Bernstein* v. *Meech,* 130 id. 354.) Obviously, the situation can, in most cases, be relieved only by some such device as a clause for liquidated damages. The courts do not, however, put a ban on recovery of profits lost in moving picture and theatrical enterprises *as such.* The nature of the business, with its many fluctuations and uncertainties, ordinarily furnishes no fair basis of computation. But if, fortunately, a plaintiff supplies sufficient certainty in his evidence, there is no reason why recovery should be denied.

In the case of *Broadway Photoplay Co.* v. *World Film Corporation (supra)* the court held that the damages were speculative and denied recovery. We find the following statement on page 108: " But there is nothing in the evidence to supply a basis for the comparison. No law of averages, no

constant or approximate uniformity of returns, can be gathered by induction from the sporadic and varying instances scattered through this record." With this in mind we can examine the evidence here.

The Auditorium Theatre was actually run by the defendant as a vaudeville house for a period of fifteen weeks in 1907–1908. During that time the weekly box office receipts were fairly uniform, as were the weekly expenses. The net receipts also were about the same every week with the exception of the two weeks ending December fourteenth and twenty-first. The temporary falling off in revenue is readily explained by the fact that a great part of the community finds it necessary to do some Christmas shopping. The new year saw the net weekly receipts return to the customary standard. Averaging the net weekly receipts over the period of fifteen weeks, we find a net revenue of about $3,500 per week. That is the showing made by the undertaking as a going vaudeville business. The actors and performers, with their individual merits and faults, came and went, but the net revenue showed a substantially uniform result. Then the defendant improperly discontinued vaudeville performances and immediately the weekly net revenue began to decline. The fluctuations became marked, and uncertainty replaced comparative stability. It is clear that the defendant's conduct caused loss. An examination of the weekly net returns for the balance of the season of 1907–1908 and for the season of 1908–1909 shows an average weekly decrease of at least $1,200 as compared with the vaudeville period. Allowing for a vaudeville season of thirty-five weeks in 1907–1908 and thirty-four weeks in 1908–1909, a total of sixty-nine weeks, the vaudeville performances were improperly eliminated for a period of fifty-four weeks. Taking the weekly loss of $1,200 over fifty-four weeks, we get a figure of $64,800. The referee placed the loss at $50,000. The Special Term stated, however, that a basis of fifty-four weeks was excessive. Even before the agreement of November 6, 1917, as to the non-production of vaudeville, it was contemplated that a few productions other than vaudeville should be given, each to occupy several weeks of the season 1907–1908. Furthermore, the United States Amusement Company went out of business and the supply of vaudeville attractions

available at the Auditorium Theatre was to a certain extent thereby curtailed. Reducing the number of weeks allotted to vaudeville in each of the two seasons, and taking into consideration the diminished supply, the Special Term, as above stated, reduced the loss of profits to $25,000. As plaintiff has not appealed it is unnecessary to determine whether the larger or the smaller, or some intermediate, amount is correct. It is only necessary to consider the argument of the defendant, who urges that the evidence does not with reasonable certainty sustain the smaller amount. The evidence does, however, indicate with all the certainty that is required in this class of cases, that the loss amounted to *at least* $25,000. That minimum may be accepted. Where the fact of loss is certain, the wrongdoer will not be heard to say that the innocent party shall be deprived of any and all recovery merely because the exact amount of damage cannot be fixed with precision. One who finds that the application of this rule to his particular case works a hardship has only his own wrongdoing to blame for his predicament.

It is not necessary to distinguish the present case from those cited by the appellant. It is clear that we have here a reasonable basis of comparison and computation; an actual experience over a period sufficiently long to supply us with fair average results. Reasonable inference replaces guess work. In other words, we have practically everything that was lacking in *Broadway Photoplay Co.* v. *World Film Corporation* (*supra*). The present case is an example of a going business improperly interrupted. (*Dart* v. *Laimbeer*, 107 N. Y. 664; *Usdansky* v. *Lane*, 184 App. Div. 140.) The evidence as to loss of profits is sufficiently definite.

The judgment should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Judgment affirmed, with costs.