## Weinglass v. Gibson.

*James P. Gilliland*, for plaintiff; *William R. Newgeon*, for defendant.

KUN, J., Dec. 15, 1930.—Plaintiff filed suit to recover damages from the defendant for alleged breach of contract. Plaintiff, producer, entered into a

written agreement with defendant, theatre owner, dated Nov. 22, 1927, to produce a theatrical performance called "Settin' The Pace" at defendant's theatre, known as Gibson's Theatre, during the week beginning Dec. 26, 1927, and ending with the midnight performance Jan. 1, 1928, after 12 o'clock A. M. Plaintiff agreed to furnish all billing matter, but no time for furnishing it was indicated in the agreement. The only prices for seats specified in the contract were those to be charged for the midnight show. The prices for all other performances, matinees and nights, were to be "regular." The agreement also provided for the division of all gross receipts, less government war tax, equally between the parties.

On behalf of the plaintiff it was contended at the trial that shortly after the execution of the agreement defendant requested the plaintiff to cancel or defer the date for the performance because defendant desired to substitute another one called "Africana" for that Christmas week, and that plaintiff refused to do so because his cast would not agree to any postponement. It was shown at the trial that on Dec. 20, 1927, the defendant entered into a contract with another producer for the presentation of the show "Africana" at his theatre during the week beginning Dec. 26th, the same Christmas week during which he was under contract with the plaintiff to produce "Settin' The Pace;" that the "Africana" contract was entered into by the defendant at or about the time that he made inquiry of the plaintiff by letter whether plaintiff was prepared to present "Settin' The Pace," requesting that billing matter be sent. This letter, though dated Dec. 17, 1927, was not posted in Philadelphia until Dec. 19, 1927, and not received by plaintiff in New York until Dec. 20, 1927.

It was further shown that immediately upon the receipt of that communication by the plaintiff he wired the defendant stating his willingness and readiness to produce the show "Settin' The Pace" according to his contract, and that he would at once send the billing matter. There was testimony that the billing matter was so sent, although its receipt was denied.

There was further proof in the case that on the same day, to wit, Dec. 20, 1927, when defendant's request for billing matter reached plaintiff, an advertisement appeared in a Philadelphia newspaper announcing the show "Africana" at defendant's theatre for Christmas week, beginning Dec. 26th; that this fact coming to the attention of the plaintiff in New York on Dec. 22, 1927, he wired again to the defendant, calling defendant's attention to the advertisement, advising that he had already sent his billing matter, reiterating that he was willing and able to perform his contract, and that he would hold defendant accountable for any violation of it. According to the proofs, defendant replied to neither telegram.

It was taken as admitted in the case that the show "Africana" was presented at the defendant's theatre during the Christmas week in question. There was further testimony in the case that the plaintiff's show, "Settin' The Pace," had been fully organized and had given some performances in New York in the early part of December; that it was in the nature of a revue, and that included in the cast were well known vaudeville artists who had appeared on Keith's Circuit. It also appeared that Christmas week was the most desirable week or peak week in the show business, conceded to be so by the defendant, with the qualification that Thanksgiving week was also considered a very good week. There were some disputed questions as to the fact of plaintiff's readiness and ability to produce his show. It also appeared by the proofs in behalf of the plaintiff that the capacity gross receipts at defendant's theatre Christmas week would be from $17,000 to $18,000. There was no denial or

qualification of this by the defendant. The disputed questions of fact were submitted to a jury, and a verdict for the plaintiff was rendered in the sum of $7335, which the court reduced to $5000.

Two major questions of law are involved. The first is whether, under the facts and circumstances in the case, plaintiff was bound to tender performance, that is, by bringing his cast over to Philadelphia on Dec. 26, 1927, and presenting them at the defendant's theatre with an offer to perform. The law never requires any one to do an idle or vain thing. Performance of a contract or offer to perform it is excused and rendered unnecessary when it is prevented by the acts of the other party or is rendered impossible by him: 13 Corpus Juris, 647, 648. This principle was early recognized in Pennsylvania: Feay *v.* Decamp, 15 S. & R. 227. The principle found expression in the recent case of Greenlee *v.* West, 71 Pa. Superior Ct. 468, as follows:

"The law does not require the performance of things impossible to be done, and especially is that true where the impossibility is created by the act of the party for whose benefit performance was to be made. By the application of the doctrine of equitable estoppel we are furnished with the key to the solution of the question before us. Why should the defendant be permitted to take any advantage of the failure of the plaintiff to pay or tender payment of a certain sum of money on a given day when he himself, for his own purposes, chose to make it impossible for the other party to act? We are of the opinion the plaintiff could maintain an action at law to enforce his rights, notwithstanding the fact he had made no actual tender nor afterwards paid the money into court to maintain a tender which had been, for all practical purposes, waived by the defendant. The plaintiff, having satisfied the jury he was ready and willing and able to pay and made every reasonable effort to do so, there was no error in proceeding with the trial of the cause just as if no question of tender had been involved."

The defendant, as was definitely established in the case, made a contract with another for the presentation of another performance, "Africana," having advertised the fact in the press several days before the opening date of the performance, Dec. 26, 1927, and it would have been an idle and useless thing for the plaintiff to have brought his cast of "Settin' The Pace" and effects over from New York and presented them at the theatre on the opening date. The plaintiff was not required to do so under the facts found by the jury. Indeed, in such circumstances, defendant having so unmistakably breached the contract, it became the duty of the plaintiff to minimize the damage, and he did minimize it by not going to the useless expense of bringing his cast and effects over from New York to Philadelphia, and the defendant received a credit for this cost of transportation, which was not incurred, under instructions of the court, as he did for salaries of several of the performers in "Settin' The Pace" who managed to secure other engagements, on the rather short notice, for the Christmas week.

The other major legal point in the case is whether there was sufficient proof as to the damages suffered by the plaintiff. The contention of the defendant was that the plaintiff was limited to recovering the cost of preparation of his show and perhaps the salaries of his cast for the Christmas week in question, and that other damages would be speculative and not recoverable.

Undoubtedly damages, if based on mere speculation, imagination or guesswork, cannot be allowed, but it is a mistake to assume that because damages cannot be fixed with mathematical precision no recovery may be had. Where there is a basis in the evidence for a reasonable computation of the damages

suffered, considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it. So, in the case of Singer Manuf. Co. v. Christian, 211 Pa. 534, where the defendant in a counter-claim sought to recover damages caused by the alleged breach of plaintiff, on account of which defendant contended his plant was kept shut down, the jury was allowed to take into account "the profit which the defendant might have made" had the plaintiff not breached its contract to furnish work continuously according to the alleged agreement in that case; and in a later case, Wilson v. Wernwag, 217 Pa. 82, numerous authorities are reviewed, including the one just cited, and it was again held that prospective profits could be recovered as damages where there has been a breach of contract, the court going so far as to approve the use, as a basis for the finding, of the profits earned by the successors of the defendant, in that case in the same line of business, the defendant having discontinued the business, an extreme view one would take it, because the factors which went into the earning of profits by the defendant's successors, such as perhaps their superior abilities and better business management, might have produced much greater profits than defendant would have earned had he continued the business himself. The court said, page 95:

"Such profits are not speculative, imaginary, or uncertain. . . . The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent, so that the damages may rest upon a definite basis and not wholly in speculation and conjecture."

This principle has been repeatedly reaffirmed. See Fidelity-Philadelphia Co. v. Simpson, 293 Pa. 577, 587; Jessup & Moore Paper Co. v. Bryant Paper Co., 297 Pa. 483, 494.

In the case before the court there was competent testimony that the peak week in the theatrical business was Christmas week; that the plaintiff's show, "Settin' The Pace," had a number of well known stars in it, stars at least in the firmanent in which they shone; that the gross receipts at the defendant's house in such a peak week of business would be from $17,000 to $18,000, not contradicted by the defendant. No question of profits was involved in this case. The agreement between the parties was to divide the gross receipts of the week in question. There was here a reasonable basis upon which the gross receipts could be fairly and reasonably estimated. The defendant might have shown what the gross receipts actually were for the week in question, but he did not. As stated, he did not contradict the estimated gross receipts given as $17,000 to $18,000. He cannot properly contend that the jury had no basis for its finding. The size of the verdict rendered by the jury indicates that they did not take the full capacity receipts of the house as a basis for the verdict, and as the verdict has been further reduced by the court, we feel satisfied that the verdict as reduced is proper and has full foundation for it in the evidence.

The language of the court in Brady v. Erlanger, 177 N. Y. Supp. 301, 304, where a finding of $25,000 in damages for failure to give certain performances in a theatre case was sustained, is in point. "Where the fact of loss is certain, the wrongdoer will not be heard to say that the innocent party shall be deprived of any and all recovery merely because the exact amount of damages cannot be fixed with precision. One who finds that the application of this rule to his particular case works a hardship has only his own wrongdoing to blame for his predicament." The court feels no hardship has been worked on the defendant in this phase of the case, the verdict, as reduced

by the court, being quite conservatively within the reasonable implications of the evidence on the question of gross receipts. Substantial justice has been done, and "substantial justice is better than exact justice:" Osterling *v.* Frick et al., Exec'rs, 284 Pa. 397, 404.

The motion for new trial was properly dismissed, and the motion for judgment *n. o. v.* was properly overruled.