ALEXANDER'S DEPARTMENT STORES, INC., Plaintiff, *v.* OHRBACH'S INC., et al., Defendants.

Supreme Court, Bronx County, April 18, 1944.

*Leo J. Bondy, Edward R. Finch, J. Norman Lewis, James P. Durante* and *Edward Kurland* for plaintiff.

*Edward J. Lazansky, Isidor J. Kresel* and *William P. Marin* for Ohrbach's Inc., defendant appearing specially.

*Monroe Goldwater* and *Bernard Katz* for Siegel Brothers Kiki Maid Koats, Inc., and another, defendants.

RICHARD P. LYDON, Official Referee. By an order and decree made in this action by the Appellate Division, First Department, on the 2nd day of July, 1943 (266 App. Div. 535, appeal dismissed 291 N. Y. 707), I was appointed to hear and determine and compute plaintiff's damages, with costs. Interlocutory judgment based on the order and decree of the Appellate Division was entered in the office of the Clerk of Bronx County on October 6, 1943.

For purposes of identification, the plaintiff Alexander's Department Stores, Inc., is referred to herein as " Alexander "; the defendant Ohrbach's Inc. as " Ohrbach "; the defendant Siegel Brothers Kiki Maid Koats, Inc. as " Siegel "; and the defendant Leeds Ltd. Coats Inc. as " Leeds ".

The action involves a restraint of competition in violation of section 340 of the General Business Law.

Plaintiff and the defendant Ohrbach are in the same business, operating department stores in the so-called " underselling " class. The coat and suit department of Ohrbach is one of the largest in the United States. Ohrbach is an older organization than is Alexander. Ohrbach draws its customers from all of the various boroughs in New York City, its New York store being located on 14th Street at Union Square. The plaintiff operates two stores in Bronx County. It had been growing steadily in size and importance. Ohrbach sought by every means to take away plaintiff's customers in Bronx County

so that they might then become customers of Ohrbach. For about seven years prior to the fall of 1942, both plaintiff and defendant Ohrbach had purchased large amounts of merchandise from the defendant Siegel and from the defendant Leeds, two corporations which manufactured and distributed popular and well-known garments such as a patented " Double-Action " removable-lining coat and " That Leeds Look " line of coats and suits. Plaintiff, during that period, had purchased $326,500 worth of such garments. Relations between Alexander and the Siegel corporation and the Leeds corporation had been entirely satisfactory during the seven years of their continued dealings. Alexander had paid its bills promptly to both of these corporations. So cordial had been the relations between plaintiff and Siegel and Leeds, that the latter corporations had been in the habit of shipping merchandise to Alexander even without receiving orders therefor. Also, the president of Alexander, Mr. Farkas, and the coat manager of Alexander, Mr. Ediff, had associated socially with Mr. Siegel, president of the two manufacturing corporations. However, Nathan M. Ohrbach, president of the defendant Ohrbach, complained to Siegel about Alexander's competition with Ohrbach on Siegel and Leeds garments. An attempt was made to get Alexander to raise its prices so that they would be higher than Ohrbach on Siegel and Leeds garments, but Alexander refused, and instead continued to sell the garments at substantially the same price as Ohrbach. Ohrbach continued to complain to Siegel about Alexander and finally, in September of 1942, a conference was held at the Ohrbach store. There an agreement, combination and arrangement was made between Ohrbach and Siegel and Leeds to eliminate the competition of Alexander with Ohrbach. This agreement, combination and arrangement included Ohrbach's taking and paying for the additional merchandise which Siegel and Leeds had theretofore sold to Alexander, together with the payment by Ohrbach of all costs of any lawsuit which Alexander might bring. In pursuance of such agreement, combination and arrangement the defendants Siegel and Leeds refused to sell any more of their merchandise to Alexander. Defendant Ohrbach, by means of the above agreement, conspiracy and combination, in violation of section 340 of the General Business Law, succeeded in eliminating both the customers and the goods themselves, having theretofore failed to take away the customers through an attempt to induce plaintiff to raise its prices above those charged by Ohrbach.

I find that defendants acted with the deliberate intent and purpose of injuring the plaintiff, and I find that plaintiff suffered

damage as hereinafter stated by reason of the unlawful acts of the three defendants.

The Appellate Division in its opinion herein (266 App. Div. 535, 538) has condemned the unlawful arrangement participated in by all three defendants, and has pointed out " that the object and effect of such arrangement were to destroy Alexander as a competitor of Ohrbach in defendants' products which Alexander had been selling for years."

The Appellate Division also stated in its opinion that " the acts complained of were planned and deliberate ".

Findings of fact and conclusions of law were made by the Appellate Division and have been considered by me.

The Appellate Division also enjoined the defendants from carrying out the unlawful arrangement. I find that nevertheless the defendants have continued and still continue to carry out their unlawful agreement in spite of this injunction of the Appellate Division.

The court also stated in Conclusion of Law No. 8 that plaintiff is entitled to recover damages against all of the defendants; and a referee should be appointed to compute plaintiff's damages, with costs.

Hearings in this matter took place before me on November 17, 1943; November 22, 1943; November 23, 1943; December 7, 1943; December 8, 1943; January 19, 1944; January 20, 1944; and February 9, 1944. And the record before me contains approximately 550 pages of testimony. Various exhibits were offered on the question of the desirability and importance of the various garments manufactured and distributed by the defendant Siegel and the defendant Leeds. I find that these two defendants are separate corporations, each manufacturing or distributing women's sport coats and suits which are the best obtainable at the price; and which by reason of newspaper, magazine, and word-of-mouth advertising, and also by reason of their intrinsic merit, were of great value to Alexander in its business.

The witness Kane, coat manager for many years for the defendant Ohrbach, and brother-in-law of Mr. Nathan M. Ohrbach, its president, although hostile, was called by plaintiff. Mr. Kane confirmed that it was of great value to Alexander and to Ohrbach to carry Siegel and Leeds garments, since they are both " underselling " stores, and they can build up a reputation by displaying at lower prices the identical goods sold in the Fifth Avenue shops. The importance to Alexander of these lines is also brought out by the fact that Alexander operates two stores in the Bronx, and it is important for it to sell

well-known apparel which is also sold in the Fifth Avenue and 34th Street shops in Manhattan; this is to counteract the long-existing habit of Bronx residents to shop in Manhattan. The well and favorably known Siegel and Leeds lines were important to Alexander as an inducement for their customers to shop uptown. The uncontradicted testimony before me was that the Siegel and Leeds line could not be duplicated in the market at the price, and I so find. I find that Alexander sustained damage by being unlawfully deprived of the right to continue to carry these well-known garments, which it had been selling for years to its customers.

Mr. Farkas testified: " In fact, the Siegel and Leeds coats I would call an outstanding example of the class of goods that helps a firm like Alexander's to make its reputation in the Borough, for this reason: The Siegel-Leeds coats are the only coats in existence in the City of New York where a woman in Bronx County, a woman uptown, can find the identical garments not only in Alexander's, but she can find them in practically every Fifth Avenue store; she can find them in Macy's; she can find them at Ohrbach's, and a good many other stores situated throughout the City."

In my determination herein I have not been unmindful of the many authorities which have held that " The person responsible for the injury must respond for all damages resulting directly from and as a natural consequence of the wrongful act according to common experience and in the usual course of events, whether the damages could or could not have been foreseen by him. * * * The fact that they cannot be measured with absolute mathematical certainty does not bar substantial recovery if they may be approximately fixed." (*Steitz* v. *Gifford,* 280 N. Y. 15, 20.)

And the Supreme Court of the United States in *Eastman Co.* v. *Southern Photo Co.* (273 U. S. 359, 379) said: " ' Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' * * * Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." (See, also, *Wakeman* v. *Wheeler & Wilson M'f'g Co.,* 101 N. Y. 205; *Stevens* v. *Amsinck,* 149 App. Div. 220; *Green* v. *Pure Oil Co.,* 247 App. Div. 734; *Usdansky* v. *Lane,* 184 App. Div. 140; Clark on Damages, § 787.)

None of the three defendants offered any testimony on the hearings before me. Although Mr. Kane, an executive of the defendant Ohrbach, was called by plaintiff to the stand and questioned on various important issues, he was not cross-examined by defendants. This was particularly significant in view of his authoritative knowledge on the questions of damage before me. Mr. Farkas testified concerning the loss of 7,500 customers and the dollar value of such loss which he stated was $112,500. In arriving at that dollar figure, Mr. Farkas stated that he had consulted records and statistics of the United States Government and of the State of New York and the City of New York. For some reason, defendants neglected to cross-examine Mr. Farkas on this figure. Defendants neither cross-examined as to this figure, nor in any way contradicted it, nor offered any testimony or other evidence to dispute it. Under the circumstances there was sufficient evidence for me to find that plaintiff lost 7,500 customers and that the money damage for such loss was $112,500.

Various original records of the plaintiff were offered in evidence. These records showed, among other things, figures as to the week-to-week business of plaintiff in sport coats and suits during the period in question. Counsel for the defendants Siegel and Leeds insisted upon an opportunity to examine these records closely for the specific purpose of contradicting them. He was granted full opportunity to make such examination and he did so on several occasions over a period of several weeks. At the final hearing he stated that he had examined the exhibit and had no cross-examination to make concerning it. Under the circumstances I find that plaintiff's evidence of damage is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, nor is it opposed to the probabilities; and this is particularly so in view of defendants' failure to offer any evidence. (*Hull* v. *Littauer,* 162 N. Y. 569; *Gnichtel* v. *Stone,* 233 N. Y. 465.) In the *Gnichtel* case the court said, at page 469: " While plaintiff's proof was not as positive and systematic in all respects as it might have been, it was neither improbable nor lacking in probative force. * * * It might have been weak against conflicting testimony, but alone it stood well enough."

The defendants Siegel and Leeds have pointed out in their brief that plaintiff's loss in sales of Siegel and Leeds merchandise aggregated $228,966.90 instead of the figure of $231,600 computed by plaintiff; and I have accepted defendants' said figure of $228,966.90.

Mr. Friedman, a member of the accounting firm of Touche Niven & Co., and a nationally known expert in department-store auditing, and who personally supervised plaintiff's accounting and auditing for the past few years, testified as to the percentage of plaintiff's net profits to sales and I have accepted his percentage both as to Siegel and Leeds garments and as to accessories.

I find, compute and determine that plaintiff is entitled to damages against all three of the defendants in the total amount of $227,755.55 with interest; and I find that such damages are made up as follows:

I find, compute and determine that plaintiff sustained loss of sales of $228,966.90 on Siegel and Leeds garments; and I find, compute and determine that plaintiff sustained a net loss of profit of $52,662.38 from such loss of sales.

I find, compute and determine that plaintiff sustained a loss of sales of $57,241.70 on accessories; and I find, compute and determine that plaintiff sustained a net loss of profit of $12,593.17 from such loss of sales of accessories.

I find, compute and determine that the value to plaintiff of carrying the Siegel and Leeds lines was $50,000; and I find, compute and determine that plaintiff has been damaged in the sum of $50,000 from being deprived of said lines.

I find that plaintiff has lost 7,500 customers by reason of defendants' acts herein complained of; and I find, compute and determine that the damage to said plaintiff from such loss of customers is $112,500.

Objections to testimony, by counsel for defendants Siegel and Leeds, as to which objections I reserved decision, are overruled, and said defendants' motions to strike out are denied, insofar as the objections and motions relate to testimony material to my findings herein.

I further find, determine and compute that said damage of $227,755.55 is for the period up to and including December 31, 1943. Plaintiff may apply hereafter for such damage as it may suffer subsequent to December 31, 1943.

I further find, determine and compute that plaintiff is entitled to interest on said sum of $227,755.55, such interest to be computed as follows: interest on $50,000 from October 1, 1942; interest on $177,755.55 from December 31, 1943.

Plaintiff may submit judgment with direction to the County Clerk of Bronx County to enter judgment with costs in accordance with the foregoing.